COMMONWEALTH vs. HOLLY KOZEC.

Essex. December 2, 1986. — March 24, 1987.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Practice, Criminal,* Argument by prosecutor, Instructions to jury. *Evidence,* Relevancy and materiality.

Discussion of rules governing a prosecutor's closing argument and the consequences of prosecutorial error. [516-520]

At a criminal trial at which the credibility of the complainant and the defendant was the central issue, certain remarks in the prosecutor's closing argument, although alleged to have been an improper appeal to the jury to decide the case on the basis of sympathy, were permissible in that they were directed to the complainant's credibility based on what the jury saw and heard. [520-521]

Where at a criminal trial, at which the defendant's credibility was at issue, the prosecutor improperly argued, without evidentiary support and over the defendant's valid objection, an inference that the defendant had tried to divert suspicion to someone else for what she had done; urged an unwarranted inference of guilt on the basis of his perception of the defendant's facial expression when the complainant testified; and argued unfounded inferences respecting his apparent goal of depicting the defendant as a prostitute or a promiscuous woman, the cumulative effect of the various lines of closing argument was so prejudicial to the defendant as to necessitate reversal of her conviction of assault and battery by means of a dangerous weapon upon a person sixty-five years of age or older. [521-526]

INDICTMENT found and returned in the Superior Court Department on September 21, 1983.

The case was tried before *Peter F. Brady,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Richard Zorza,* Committee for Public Counsel Services, for the defendant.

*Kevin M. Burke,* District Attorney, for the Commonwealth.

*Judith H. Mizner, Nancy Gertner & John Reinstein,* for Civil Liberties Union of Massachusetts, amicus curiae, submitted a brief.

WILKINS, J. Convicted of assault and battery by means of a dangerous weapon upon a person sixty-five years of age or older (but acquitted of assault with intent to commit murder), the defendant appealed to the Appeals Court, which reversed her conviction. *Commonwealth* v. *Kozec,* 21 Mass. App. Ct. 355 (1985). Supported by the Attorney General and every other district attorney in the Commonwealth, the district attorney for the Eastern District applied for further appellate review, which we granted.

The Appeals Court reversed the conviction largely on the basis of prejudicial improprieties in the prosecutor's closing argument. *Id.* at 364-365. The Commonwealth complains that the "opinion lacks application of specific guidelines as to permissible conduct for prosecutors." We shall discuss this complaint, first generally and then specifically as to this case. We agree with the Appeals Court's conclusion that the judgment must be reversed.

We briefly summarize the basic facts concerning the stabbing of the victim, which are more fully set out in the Appeals Court opinion. *Id.* at 356-358. There is no dispute that late one July night in 1983, the defendant, a nineteen year old woman, stabbed the victim, a seventy-four year old man, on a rural road in Salisbury. The victim testified that he offered the defendant a ride home to Amesbury and she accepted. Thereafter, it is agreed, the victim turned his vehicle off the main road and stopped the car. There were no other eyewitnesses to what next happened. The defendant and the victim differ significantly as to what was said and done. The victim said that the defendant attacked him with a knife because he would not pay her $50 for sexual activity she offered him. On the other hand, the defendant, who admitted that she was intoxicated, testified that she rejected the victim's offer of sexual activity for money, and he thereupon attacked her. She testified that she grabbed a knife, but could not recall stabbing the victim. After some intermediate activity, which we shall

discuss in part later, the defendant drove the victim, who had been stabbed twice in the chest, to a hospital in Newburyport.

Between the July, 1983, stabbing and the July, 1984, trial, the victim's physical condition substantially deteriorated. He suffered a stroke; he lost a great deal of weight; his sight was impaired by cataracts; and his hearing deteriorated. Prior to July, 1983, he had had a laryngectomy that required him to use a stoma voice amplifier to talk. He testified, with the aid of his daughter as an "interpreter," from a wheelchair.

## The Prosecutor's Closing Argument

1. The Commonwealth argues that recent appellate treatment of challenges to prosecutors' final arguments has had an improper chilling effect on their forceful advocacy because convictions have been overturned and prosecutors threatened with discipline for the violation of governing rules which, it is said, are subjective and imprecise. The Commonwealth also argues that the system operates inequitably in this respect because it does not deal with overzealous, unfair, or unethical closing arguments of defense counsel.

The rules governing prosecutors' closing arguments are clear in principle. We have never criticized a prosecutor for arguing forcefully for a conviction based on the evidence and on inferences that may reasonably be drawn from the evidence. See *Commonwealth* v. *Earltop,* 372 Mass. 199, 205 (1977) (Hennessey, C.J., concurring). On the other hand, a prosecutor should not refer to the defendant's failure to testify,[1] misstate the evidence or refer to facts not in evidence,[2] interject personal

---

[1] *Commonwealth* v. *Smith,* 387 Mass. 900, 908-909 (1983). *Commonwealth* v. *Hawley,* 380 Mass. 70, 82-84 (1980). See *Commonwealth* v. *Borodine,* 371 Mass. 1, 10 (1976), cert. denied, 429 U.S. 1049 (1977).

[2] See, e.g., *Commonwealth* v. *Lamrini,* 392 Mass. 427, 433-435 (1984) (no evidence of robbery as motive, improper to argue it); *Commonwealth* v. *Hoppin,* 387 Mass. 25, 28-31 (1982); *Commonwealth* v. *Shelley,* 374 Mass. 466, 470 (1978). See S.J.C. Rule 3:08, PF 13 (a), and PF 14, as appearing in 382 Mass. 802 (1981). See S.J.C. Rule 3:08, DF 14 (a), as appearing in 382 Mass. 807 (1981), for a parallel rule applicable to defense counsel.

belief in the defendant's guilt,[3] play on racial, ethnic, or religious prejudice[4] or on the jury's sympathy or emotions,[5] or comment on the consequences of a verdict.[6]

The problem is that, on the facts of given cases, close questions arise whether the prosecutor has gone over the line between fair and improper argument. In such cases, we must and do recognize that closing argument is identified as argument, the jury understands that, instructions from the judge inform the jury that closing argument is not evidence, and instructions may mitigate any prejudice in the final argument. See *Commonwealth* v. *Benjamin, ante* 220, 223-224 (1987).[7] A certain measure of jury sophistication in sorting out excessive claims on both sides fairly may be assumed. See *Commonwealth* v. *Palmariello,* 392 Mass. 126, 134 (1984); *Commonwealth* v. *Bradshaw,* 385 Mass. 244, 277 (1982) ("The jury could be expected to take both arguments with a grain of salt"); *Commonwealth* v. *Johnson,* 372 Mass. 185, 197 (1977); *Commonwealth* v. *Coleman,* 366 Mass. 705, 714 (1975). In this case, the jury may have done just that kind of sorting out because they in part rejected the position of each side, returning a verdict of not guilty on one charge and guilty on the other.

Part of the uncertainty of the current law concerning prosecutorial error in final argument concerns the unpredictability

---

[3] *Commonwealth* v. *Earltop,* 372 Mass. 199, 203-204 (1977). *Commonwealth* v. *DeChristoforo,* 360 Mass. 531, 536-537 (1971), aff'd sub nom. *Donnelly* v. *DeChristoforo,* 416 U.S. 637 (1974). See S.J.C. Rule 3:08, PF 13 (b), as appearing in 382 Mass. 802 (1981). See also S.J.C. Rule 3:08, DF 14 (b), as appearing in 382 Mass. 808 (1981), for a parallel rule applicable to defense counsel.

[4] See *Commonwealth* v. *Mahdi,* 388 Mass. 679, 693 (1983); *Commonwealth* v. *Graziano,* 368 Mass. 325, 331-332 (1975).

[5] See, e.g., *Commonwealth* v. *Clary,* 388 Mass. 583, 592 (1983); *Commonwealth* v. *Shelley,* 374 Mass. 466, 470 (1978).

[6] See, e.g., *Commonwealth* v. *Smith,* 387 Mass. 900, 910-911 (1983) (improper to argue that the defendant will walk the streets); *Commonwealth* v. *Killelea,* 370 Mass. 638, 644-649 (1976) (improper to argue that on a verdict of not guilty by reason of insanity, defendant will walk the streets).

[7] Early in his charge, the judge instructed the jury that "[t]he closings that they just have finished making are not evidence. They are really the lawyers espousing a certain position."

on appeal of the consequences of an improper final argument. The consequences of prosecutorial error depend on a number of factors, such as: Did the defendant seasonably object to the argument?[8] Was the prosecutor's error limited to "collateral issues" or did it go to the heart of the case (*Commonwealth v. Shelley*, 374 Mass. 466, 470-471 [1978])? What did the judge tell the jury, generally or specifically, that may have mitigated the prosecutor's mistake, and generally did the error in the circumstances possibly make a difference in the jury's conclusions? See *Commonwealth v. Cifizzari*, 397 Mass. 560, 579-580 (1986); *Commonwealth v. Bourgeois*, 391 Mass. 869, 884-885 (1984). On numerous occasions, the impact of an improper final argument has been mitigated by the judge's forceful instructions to the jury that the argument was inappropriate and should be disregarded. See, e.g., *Commonwealth v. Borodine*, 371 Mass. 1, 10 (1976), cert. denied, 429 U.S. 1049 (1977); *Commonwealth v. Domanski*, 332 Mass. 66, 69 (1954). See also *Commonwealth v. Brown*, 392 Mass. 632, 641-642 (1984). Contrast *Commonwealth v. Hoppin*, 387 Mass. 25, 31 (1982); *Commonwealth v. Hawley*, 380 Mass. 70, 82-86 (1980). All these considerations must be undertaken on a case-by-case basis, and, although patterns of disposition may emerge from the cases in which there is prosecutorial error in the final argument, no satisfactory bright line rules can be found or could be written. Because the prosecutor was the source of the error, the Commonwealth should not express distress that the consequences to the defendant of the error

---

[8] Without a proper objection, the standard of review changes to the defendant's detriment. See *Commonwealth v. Fitzgerald*, 376 Mass. 402, 416 (1978) (in the absence of objection, the question we may choose to consider is whether there was a substantial risk of a miscarriage of justice). The absence of objection by defense counsel during or after argument may provide some guidance as to whether a particular argument was prejudicial in the circumstances. See *Commonwealth v. Toro*, 395 Mass. 354, 360 (1985). Objection at the conclusion of the prosecutor's argument normally preserves the defendant's rights. See *Commonwealth v. Cancel*, 394 Mass. 567, 574 (1985). If the defendant properly objected to closing argument, he is entitled to appellate review "as of right." See *Commonwealth v. Bourgeois*, 391 Mass. 869, 884 (1984).

depend on a judgmental assessment of several factors, particularly where, in a given case, the weighing of factors may preserve a conviction in spite of the error.

The Commonwealth is correct that it and its prosecutors are held to a stricter standard of conduct than are errant defense counsel and their clients, or, put another way, it is true that the government may suffer more serious consequences from improper closing argument than will the defense. We have rejected the argument that a prosecutor may simply "fight fire with fire" and exceed the normally proper limits of argument because defense counsel made an improper, excessive argument.[9] Although defense counsel's argument may justify a particular rebuttal from the prosecutor, the prosecutor, as a representative of the government, must hold himself to a consistently high and proper standard. See *Commonwealth* v. *Shelley, supra* at 472. The prosecutor may object to defense counsel's argument if he regards it as improper, and he may request appropriate curative instructions. The judge may intervene spontaneously to stop improper argument and should give curative instructions, preferably forthwith. See *Commonwealth* v. *Hawley, supra* at 85.[10] Defense counsel should be careful because a judicial reprimand in such circumstances does not aid the defendant. See *Commonwealth* v. *Earltop, supra* at 207 (Hennessey, C.J., concurring). The fact remains, however, that no

---

[9] "The Commonwealth's right to 'fight fire with fire' is aimed at answering 'prejudicial irrelevancy argued by opposing counsel,' *Salter* v. *Leventhal,* 337 Mass. 679, 698 (1958), it is limited to 'correct[ing] the erroneous impression for which the defendant himself was responsible.' *Commonwealth* v. *Smith,* [342 Mass.] at 186." *Commonwealth* v. *Haas,* 373 Mass. 545, 561 (1977), *S.C.,* 398 Mass. 806 (1986). It is not a license to indulge in improper argument. We have accepted the point only that a prosecutor may properly comment to correct "an erroneous impression created by opposing counsel." *Commonwealth* v. *Bradshaw,* 385 Mass. 244, 277 (1982), quoting *Commonwealth* v. *Burke,* 373 Mass. 569, 576 (1977). See *Commonwealth* v. *Prendergast,* 385 Mass. 625, 633-634 (1982), for an example of proper retaliatory reply.

[10] The judge also should report egregious conduct by any counsel to the Board of Bar Overseers. See S.J.C. Rule 3:09, Canon 3 (B) (3) (b), as appearing in 382 Mass. 809 (1981). If defense counsel was appointed by the Committee for Public Counsel Services, it also should be advised of egregiously improper closing argument.

matter how inappropriate defense counsel's closing argument may have been, it probably will have no bearing either in defining the proper limits of the prosecutor's argument or in assessing the defendant's chances on an appeal challenging the prosecutor's closing argument.

2. The defendant argued, and the Appeals Court agreed, that some of the prosecutor's remarks on why the jury should believe the victim's testimony were "an impermissible appeal to the jury to decide the case on the basis of sympathy." *Commonwealth* v. *Kozec,* 21 Mass. App. Ct. at 362-363.[11] The Appeals Court expressed its disapproval of the prosecutor's argument in most forceful terms.[12]

The basic issue at trial was the credibility of the victim and the defendant. Because the victim testified, this case does not

---

[11] The challenged portion of the remarks was as follows:

THE PROSECUTOR: "Now, why should you believe that story from [the victim]? Well, you have two different manners in which to analyze his testimony. Take first his demeanor. Now, as [the victim] sat before you, he couldn't see because of cataracts. He couldn't hear apparently because of old age. He couldn't talk because of a laryngectomy, and he couldn't walk apparently because of a stroke, and on top of that as Dr. Russo said, his wounds still hadn't completely healed. So, [the victim] was by virtue of the physical circumstances that he finds himself in, many of which are not connected to the stabbing at all, a man who lives in his own little world. Do you think that a man who lives like that is going to be concerned enough about what people think of him and make up a story to cover something that he did that was wrong that night? Nothing worse could happen to [the victim]. He doesn't have to worry . . . ."

DEFENSE COUNSEL: "Objection."

THE JUDGE: "Overruled."

THE PROSECUTOR: "If he was the aggressor that night, nothing could happen to him from telling you that fact and being candid about it. Well, let me put it another way. Isn't it your experience that people who are in their direst physical circumstances are in fact the most candid of all people, the people who bare their souls and tell you the things that they wouldn't tell you before?"

[12] The Appeals Court said: "The argument riveted the jury's attention on the spectacle of the complainant, who appeared before them confined to a wheelchair, suffering from the effects of a stroke, partially blind and deaf, and unable to speak unaided. We think the prosecutor unfairly sought to exploit the natural empathy any jury might feel for someone in the complainant's condition by suggesting that the complainant was truthful since 'nothing worse could happen to him.'" *Id.* at 363.

involve an appeal for sympathy for a deceased victim. It concerns a victim-witness whose testimony the prosecutor wanted the jury to believe. It is not improper to make a factually based argument that, due to the demeanor, disclosed circumstances, and appearance of a witness, a particular witness should be believed or disbelieved. The jury were aware from the testimony, and both counsel reminded them, that the victim's current physical condition in large measure was not caused by the injuries the defendant inflicted on him.

Defense counsel fairly argued that, because members of his family were listening in the courtroom, the victim did not tell the truth about what he had said and what happened in his motor vehicle with the defendant. The prosecutor replied in effect that the victim was in such a physical state that telling the truth, even if damaging to his reputation, would not matter and that in his condition he should be seen as more apt to be candid than if he were in robust health. Whatever one thinks of the logic or illogic of the claim that people in such a condition tend to be more believable than others, the argument is directed to credibility based on what the jury saw and heard. The defendant did not ask for an instruction that sympathy for the victim should play no role in the jury's deliberations. The prosecutor's argument in any event did not exceed proper limits.

3. The evidence bearing on whether the defendant may have sought to trap Frank Saporetto, the doorman at the Tic Toc Club where she worked as a barmaid, into taking the victim to the hospital without her accompanying him came first from Saporetto and later from the defendant. We set forth the evidence in the margin.[13]

---

[13] Saporetto testified on direct examination for the Commonwealth that the defendant said to him "He's dying. You've got to help me drive him to the hospital." Later he said: "She was repeating to me, saying please drive her to the hospital. She said drive me — She insisted on my driving to the hospital." On cross-examination, defense counsel asked Saporetto: "And [the defendant] all the time is still hysterical saying, 'Oh, Frank, we've got to help him, Frank. We've got to do something, Frank. We've got to get him to the hospital, Frank'?" Saporetto answered, "Yes." Later in cross-examination Saporetto answered affirmatively to the following ques-

The question here is whether the prosecutor's argument that the defendant may have been trying to involve Saporetto while she slipped away is warranted by the evidence.[14] The Appeals Court thought the argument unfair because it was contradicted by the evidence. Arguments that are unsupported by the evidence and thus are speculative and conjectural are, of course, improper. *Commonwealth* v. *Connor,* 392 Mass. 838, 853 (1984). *Commonwealth* v. *Clary,* 388 Mass. 583, 593-594 (1983). *Commonwealth* v. *Redmond,* 370 Mass. 591, 594-595 (1976). We agree with the Appeals Court that the inference that the defendant had tried to trap Saporetto cannot fairly be drawn from the evidence.

The prosecutor's misstep was not, however, outrageous and, standing alone, might not warrant reversal of the judgment of conviction. Certainly the defendant's admitted behavior after the stabbing did not seem fully consistent with a sense of total innocence. She did not seek the most immediately available help. She did not drive directly either to the police station (which was across a street from the Tic Toc Club) or to a hospital. Going instead to Saporetto for help justified prosecutorial comment on the defendant's behavior as evidence of consciousness of guilt. The prosecutor went too far, however, in suggesting that the defendant may have undertaken to trap Saporetto.

By overruling the defendant's valid objection, the judge appeared to give judicial endorsement to the prosecutor's improper argument. *Commonwealth* v. *Cobb,* 374 Mass. 514, 521 (1978). A few words from the judge, at the time of the defendant's objection or later, probably would have cured the error. The judge could have told the jury that the argument was improper or, if in doubt about the argument's propriety, the judge could have taken a neutral posture and advised the

tion: "Q. You told us she was saying 'Frank, you've got to drive us. You've got to drive him to the hospital,' right?"

On direct examination, the defendant testified that she asked Saporetto to drive her to the hospital. On cross-examination by the prosecutor, she answered "I think so" to the question, "You asked him to drive the man to the hospital, didn't you?"

[14] See 21 Mass. App. Ct. at 361 for the prosecutor's argument and the judge's overruling of the defendant's objection to it.

jury that, if their memory of the evidence did not support the prosecutor's argument, they should disregard it.[15]

4. We come now to portions of the prosecutor's argument that are not properly before us as independent grounds for reversal of the conviction. Once a properly raised objection to a prosecutor's argument is found to be valid, the entire record, including the balance of the prosecutor's argument, becomes relevant in determining whether the error was prejudicial to the point of requiring a reversal of the conviction. See *Commonwealth* v. *Burke,* 373 Mass. 569, 577 (1977).

One aspect of the prosecutor's closing argument objected to below, not challenged on appeal, but regarded by the Appeals Court as "troublesome" (21 Mass. App. Ct. 364 n.7), is the prosecutor's comment that the defendant looked sorry when the victim testified because she knew the truth about what happened between them would come out.[16] This assertion of consciousness of guilt on the basis of the prosecutor's perception of the defendant's expression when the victim testified was unfair and improper because an inference of guilt was not warranted. See *Commonwealth* v. *Young, post* 527 (1987). The argument amounts to the prosecutor's testifying that the defendant looked sorry at that time and states that he knew

---

[15] Judges and counsel rarely have transcripts of the testimony to guide them, as appellate judges do in their leisurely review. The exact words of a witness may be crucial in deciding whether an argument is proper. Where a decision must be made promptly, a general statement such as we suggest will help and, in many cases, will cure any prosecutorial error.

[16] The argument was as follows:

THE PROSECUTOR: "Well, didn't she look sorry when she saw [the victim] in court when he testified? Doesn't that indicate that she wasn't the evil woman that she was portrayed out on the Dump Road? Well, remember without [the victim], this case would just be a circumstantial case. When he came in the courtroom, it was clear that his version, the truth about what had happened . . . ."

DEFENSE COUNSEL: "Objection."

THE JUDGE: "Overruled."

THE PROSECUTOR: "[O]n the Dump Road didn't come out. What she was sorry about was that now you would know what really happened."

After the argument, the objection was renewed. No curative instruction was given.

why. In fact, a number of emotions may cause an appearance which is similar to an expression of sorrow, and there could have been a number of reasons for any sorrow the defendant may have felt. To urge an inference of guilt from such an appearance is unwarranted. See *Commonwealth* v. *Hoppin,* 387 Mass. 25, 30 (1982); *Commonwealth* v. *Villalobos,* 7 Mass. App. Ct. 905 (1979).[17]

We also agree with the Appeals Court's criticism of the prosecutor's argument (see 21 Mass. App. Ct. at 361 n.3) that an open jar of Vaseline in the defendant's purse suggested the possibility that she was prepared for sexual conduct when she got in the victim's motor vehicle and further suggested that she might have been a prostitute.[18] No fair inference could be drawn from the presence of the Vaseline that the defendant might be a prostitute or that she was prepared for sexual conduct. If the jury were to conclude that she was a prostitute and entered the defendant's vehicle anticipating sexual conduct, that would have done much to corroborate the victim's testimony that the defendant was the instigator of the struggle. The argument was prejudicial.

### *Jello Wrestling*

The judge denied the defendant's pretrial motion in limine which sought a ruling that evidence of the defendant's employment as a jello wrestler was inadmissible. At trial Saporetto testified that he had seen the defendant working at the "Frolics" as a jello wrestler, wrestling with women in a ring of jello.[19]

---

[17] The defendant testified. The prosecutor could have properly inquired of her whether she was sorry when the victim testified and, if she was, why.

[18] Defense counsel did not object with sufficient specificity to this portion of the prosecutor's argument. The point is nevertheless argued on appeal.

[19] The defendant later testified on direct examination that she had jello wrestled once on a dare. On cross-examination, she testified that the wrestling occurred two months before the stabbing incident; she did not remember how jello wrestling "worked"; and she had tried to wrestle another woman but the match had been called off after about a minute and a half. The Appeals Court accepted as true the defendant's description of her limited involvement in jello wrestling. See *Commonwealth* v. *Kozec,* 21 Mass.

The Commonwealth seeks to justify the admission of the evidence as tending to show the defendant's special agility and strength and thus to support the credibility of the victim's testimony concerning the way the defendant threw him around.

The Appeals Court concluded, we think correctly, that the evidence had no probative value and that its admission was prejudicial because "it furthered the prosecutor's apparent goal of depicting Kozec in the minds of the jury as a promiscuous woman." 21 Mass. App. Ct. at 364. There was no evidence that jello wrestling indicates superior agility and strength. Nor is there, however, any direct evidence prejudicial to the defendant of the circumstances of jello wrestling, the attire worn, the desired physical attributes of participants, or the likely audience.

Standing alone, the admission of this evidence, which the prosecutor did not argue to the jury, might not require reversal of the conviction, but coupled with other problems presented by the prosecutor's closing argument it does. Even if we were to attribute some relevance to the jello wrestling evidence, the prejudice to the defendant of the admission of that evidence would outweigh it. We suspect that a jury would view jello wrestling at a place called the Frolics, not as a test of athletic skill but rather as a form of exhibitionism with demeaning sexual overtones, in a sense as evidence of the defendant's bad character. The defendant's character was not in issue and, as all agree, could not have been used to show criminal propensity. See *Commonwealth* v. *Roberts,* 378 Mass. 116, 129 (1979); *Commonwealth* v. *Yelle,* 19 Mass. App. Ct. 465, 468-472 (1985).

## Conclusion

Although we have rejected a challenge to one portion of the prosecutor's closing argument with which the Appeals Court agreed (see 520-521 above), we concur with the Appeals Court's conclusion that collective errors in the prosecutor's

App. Ct. at 364. Saporetto's testimony, which the jury could have believed, suggests that the defendant's involvement was greater than she said it was.

closing argument and the admission of evidence that the defendant had been a jello wrestler require reversal of her conviction. The prosecution undertook, by evidence or argument or both, to portray the defendant as a prostitute with a background as a jello wrestler, who tried to trap another into taking responsibility for what she did and who showed her guilt by appearing sorry in the courtroom. None of this was proper. All of it was prejudicial. The prosecutor exceeded the limits of what could reasonably be argued on the evidence, not in an egregious way but simply in trying to get more out of the evidence and the defendant's courtroom appearance than he was fairly entitled to.

We agree with the Appeals Court's comments on matters that may arise on retrial.

*Judgment reversed.*

*Verdict set aside.*