COMMONWEALTH *vs.* WILLIE WARD.

No. 87-1408.

Suffolk. January 23, 1990. - February 23, 1990.

Present: ARMSTRONG, CUTTER, & KASS, JJ.

*Practice, Criminal*, Argument by prosecutor.

At a criminal trial in which the case for the prosecution was a fragile one, resting on a single eyewitness identification, the prosecutor's improper appeals during closing argument to the jury's emotions and fears, which were not neutralized by forceful correction or curative instructions by the judge, created a substantial risk of a miscarriage of justice. [294-297]

INDICTMENTS found and returned in the Superior Court Department on April 22, 1986.

The cases were tried before *James D. McDaniel, Jr.*, J.

*Chrystal Murray*, Committee for Public Counsel Services, for the defendant.

*Lauren Inker*, Assistant District Attorney, for the Commonwealth.

KASS, J. What had been tried to the jury was a case of all too routine urban mugging, one made more poignant by the flight of two passersby who turned a deaf ear to the victim's calls for help. The precise charges against the defendant, of which he was convicted, were armed robbery and assault and battery by means of dangerous weapons, a handgun and a sharp instrument.

Winding into his argument, the prosecutor had this to say:

"If you think I was unfair, vote not guilty. Because, folks, what this case is about, and it ain't about a backpack, and it ain't about fifteen bucks or a calculator or notes. It's about two thugs. He [the defendant] was one of them, lurking in the bushes on a dark street,

waiting for some poor sucker to come by. And that sucker was Ferron Sailsman. And it could have been you, and it could have been you, and it could have been me. But, it wasn't, it was Ferron Sailsman. That's what this case is about. That's what violence is about. That's what crime is about. That's what's wrong in this place we call the world.

"You have something, somebody else want[s] it, and they just take it. And, if you resist, you get clobbered. And, if you fight, you get stabbed. And, if you hold onto it, you're going to get shot.

"Folks, if you ever have the feeling of 'stop this world, I want to get off,' boy, you should have had it listening to this night, November 11th, '85.

"Ferron Sailsman, an interesting person, and I'm not pointing this out for sympathy. Sympathy goes out the window, it has no part in this trial. Sympathy for Ferron Sailsman or sympathy for him.

. . .

"He sees a couple of guys up on the corner on the dark side of the street. No big thing. Comes up to them, and oh boy, oh boy, welcome to America, Ferron. Here's what happens when you walk around dark streets. There's going to be somebody there to rip you off. Might I submit, a couple of punks. A couple of thugs.

. . .

"He resisted a bit. And then he started getting tattooed around the head, he put his arms up. And, then he thought he got punched. Then a couple came down, and that's — boy, isn't that — I'm not knocking, I'm not criticizing those people. But, boy, sometimes, sometimes you're going to have to learn something. We are our brother's keepers.

"I'm not saying they should have been heroic, but, boy, we have to start looking after each other, folks. Because, if we don't start caring about what's happening to other people, if we don't, the thugs are going to rule

our lives. I don't know who said it, I wish it were me, but it was once said, 'The only way evil can conquer us, the only way, is when we surrender to it.' That couple, that female, boyfriend, or female with her, ran off when he was yelling 'help.' Boy, we better really think, whatever you've heard, we better give some thought to that, folks. We are, in fact, on this planet, and we are in this boat together. Enough about the couple.

. . .

"There's a lot of things wrong with this country, folks. And we all know it. But, there's a lot of things good about it. This system isn't perfect, but I suggest, respectfully to you, it's the best there ever was. And, I suggest, respectfully, it's the best there ever will be. Because this system's governed by a couple of fundamental things, and that is a value and a respect for human dignity for all of us. Including him.

"It takes, I suggest to you, courage to do as citizens what you swore a solemn oath to do. It took courage, in a sense, for Ferron Sailsman. And, some of you, at various times said, 'That kid was a fool.' He did something to protect himself and to try to keep what was his.

"When you're up there, and you're talking about this case, it's going to take courage, and courage, contrary to Hollywood, courage isn't exhibited in the absence of fear. Courage occurs in the presence of fear. And a person acts, although he's afraid and fearful, but he does act.

"Veritas dictum. Speak the truth. He took the schoolbag, but more importantly he took human dignity. Speak the truth."

Taken in the aggregate, the closing argument sounded a persistent theme that the jury had a duty to confront crime in the streets bravely and to avenge the wrong done the victim. Such may be the obligation of law enforcement agencies and society, but it was not at all the task of the jury. The duty of the jury was to decide whether Willie Ward, the defendant, was an actor in a particular stabbing and robbery.

Evidence linking the defendant to the mugging was cogent, but not overpowering. It consisted of the victim's identification of the defendant as one of two assailants. The identification was on the basis of a picture in an array followed by a face to face identification at a pretrial hearing. Perforce, courts rely on eyewitness identification but do so conscious that such identification is significantly subject to error. See Buckhout, "Eyewitness Testimony," 231 Scientific Am. 23 (1974). The defense was alibi based solely on the defendant's say-so, i.e., not reinforced by any other testimony or evidence tending to prove that the defendant was elsewhere at the time of the crime. Whatever doubts the defendant's alibi testimony might have engendered could have been overborne by the rousing summons to the jury to meet the challenge of urban crime.

If the prosecutor's closing argument had merely been off the point, one could shrug it off. The closing speech, however, played impermissibly on the jury's emotions and pandered to their fears. See *Commonwealth v. Shelley*, 374 Mass. 466, 470 (1978); *Commonwealth v. Clary*, 388 Mass. 583, 591-592 (1983); *Commonwealth v. Kozec*, 399 Mass. 514, 516-517 & n.5 (1987); *Commonwealth v. Sevieri*, 21 Mass. App. Ct. 745, 754-755 (1986). Prosecutors should not comment on the consequences of a verdict. *Commonwealth v. Smith*, 387 Mass. 900, 910-911 (1983). *Commonwealth v. Kozec*, 399 Mass. at 517 & n.6. Yet the harping on the brutality of the urban scene and the duty to come to the aid of law-abiding folk was an inferential summons to the jury to seize the occasion to help extirpate street crime.

Deciding whether a prosecutor's improper closing argument is sufficiently consequential to require reversal presents an exercise in weighing factors discussed in *Commonwealth v. Kozec*, 399 Mass. at 518-519. One such factor is whether defense counsel objected. Here defense counsel was tolerant to a fault of the prosecutor's effusions.[1] In the circumstances, we apply a "substantial risk of a miscarriage of justice" test

---

[1] Indeed, defense counsel also had some comments about safe streets, but with the saving grace that the point he was laboring was that the jury

to the closing argument. *Id.* at 518 & n.8. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967). We think that this fragile case, resting on a single eyewitness identification, became susceptible to serious risk of a miscarriage of justice when it was exposed to potent appeals to emotion and fear.

Another factor is whether the trial judge neutralized the improper argument through forceful correction or curative instructions. Here the judge charged the jury to "determine the facts . . . without prejudice, without fear, without favor; solely from a fair consideration of the evidence. . . . You cannot speculate as to what might or might not have been the real facts, or allow yourself to be influenced by the popularity or the lack of popularity of the crimes charged. But, rather you must confine your deliberations to the evidence and nothing but the evidence." Somewhat later in the charge he stated that "arguments and statements of counsel are not evidence,"[2] and that the presumption of the defendant's innocence was "no mere idle theory to be cast aside by the jury through mere caprice, passion, or prejudice." Near the end of the charge, he cautioned the jury "not to pick and choose what instructions you want to rely on or pay attention to."

These instructions were surely salutary, but they were insufficiently directed against the improper comments of the prosecutor and were unlikely to counteract their poisonous effect. Out of concern that the excesses of the prosecutor may have acted as an untoward influence in the jury's deliberations, we reverse the judgment. Contrast *Commonwealth* v. *Porter*, 24 Mass. App. Ct. 694, 698 (1987); *Commonwealth* v. *Cobb*, 26 Mass. App. Ct. 283, 287-288 (1988). Compare *Commonwealth* v. *Earltop*, 372 Mass. 199, 203-204 (1977); *Commonwealth* v. *Palmariello*, 392 Mass. 126,

---

ought not to convict the wrong man out of generalized concern about urban violence.

   [2]The judge had first given this instruction prior to the opening statements of counsel. Before closing arguments began, he had repeated it, adding, "[t]he lawyers now, are going to attempt to persuade you to see the evidence their way. That's their job to try to do that. If you're persuaded, fine. If you're not, that's all right too."

135 (1984); *Commonwealth* v. *Sanchez*, 405 Mass. 369, 375 (1989); *Commonwealth* v. *Barros*, 24 Mass. App. Ct. 964, 965 (1987); *Commonwealth* v. *Achorn*, 25 Mass. App. Ct. 247, 250-251 (1988).

Should the Commonwealth exercise its right to bring the defendant to trial again, we think that, in view of the uncertainty about whether a sentence was imposed in a prior and unrelated case against the defendant for shoplifting, that offense ought not to be called to the attention of the jury as a prior conviction. See *Commonwealth* v. *Rossi*, 19 Mass. App. Ct. 257, 258-259 (1985).

*Judgments reversed.*

*Verdicts set aside.*