COMMONWEALTH *vs.* CUFF W. DAVIS. No. 91-P-1066. March 16, 1995. *Practice, Criminal,* Instructions to jury, Comment by prosecutor. *Evidence,* Relevancy and materiality, Consciousness of guilt. *Homicide. Malice.*

At the trial of indictments charging the defendant with unlawfully carrying a rifle and murder in the first degree, the Commonwealth presented evidence to show that the defendant lay in wait as the unarmed victim walked along a basement corridor to a storage room. When the victim was within three feet of him, the defendant jumped out into the open and shot him with a rifle. The defendant claimed self-defense on the basis that shortly before the shooting, the victim had threatened to kill him and that he shot the victim in the belief that he was reaching for a weapon. On appeal, the defendant argues only in respect to his conviction of murder in the second degree. He claims error in certain evidentiary rulings, the jury instructions, and the prosecutor's closing argument. Appellate counsel for the Commonwealth was not trial counsel. We affirm.

1. *Evidence of other bad acts.* (a) There was evidence to show that after the shooting, the defendant fled. About five hours later, he telephoned the police and, in a recorded conversation, stated: "I killed a guy tonight. I'm the one that they're looking for on T.V. but right now I'm not turning myself in. *I have one more murder to do and it will be happening tonight and you will know*" (emphasis added). The defendant argues that the probative value of the italicized portion of his statement was far outweighed by its potential for prejudice and that the Commonwealth should have been limited to his admission that he "killed a guy tonight." Immediately after the tape recording was played for the jury, the trial judge gave an instruction (to which the defendant took no objection and from which we see no substantial risk of a miscarriage of justice) limiting consideration of the defendant's statements to the "issue of how it may or may not reflect

the defendant's state of mind or his intent" and advising that there was to be no speculation concerning another murder as there was no evidence of such an occurrence. There was no abuse of discretion by the trial judge. See *Commonwealth* v. *Sneed*, 413 Mass. 387, 396-397 (1992). (b) In claiming that the defendant's expressions of regret to a police officer about not having killed two of the witnesses to the shooting were irrelevant to his state of mind and any other issue in dispute, the defendant does not take into account the fact that "[i]t is well established that evidence regarding threats or intimidation of key witnesses for the prosecution is admissible to demonstrate consciousness of guilt." *Commonwealth* v. *Scanlon*, 412 Mass. 664, 676-677 (1992). See also *Commonwealth* v. *Leonardi*, 413 Mass. 757, 763-764 (1992). (c) Although the defendant's statement to a witness, that he dreamed that he had pushed her into a river, could be deemed as having only marginal relevance in respect either to the defendant's state of mind or his motive for the shooting, we see no substantial risk of a miscarriage of justice in allowing the jury to hear that fact. The single reference to that incident was insignificant, especially when considered in light of the witness's description of the defendant's other conversations and acts about which there is no complaint on appeal.

2. *The jury instructions.* In her jury instructions on murder, the trial judge stated: "Malice aforethought refers to a frame of mind which includes not only anger, hatred and revenge, but every other unlawful and unjustifiable motive. It is any intent to inflict injury without legal excuse or legal justification." The defendant claims that under *Commonwealth* v. *Burke*, 414 Mass. 252, 265 (1993), that instruction requires reversal of his conviction. We do not agree. As we read *Burke*, the given instruction, which is almost identical to the one here in issue, was found to be erroneous because it was insufficient, that is, there the jury was never informed that "[m]alice aforethought may be shown by 'proof that the defendant, without justification or excuse, intended to kill the victim or to do the victim grievous bodily harm'. . . [and that] malice aforethought may be inferred if, in the circumstances known to the defendant, there was a 'plain and strong likelihood that death would follow the contemplated act.' " *Ibid.* In the present case, the trial judge clearly included within her instructions on malice aforethought all that is discussed in *Commonwealth* v. *Grey*, 399 Mass. 469, 470 n.1 (1987). Moreover, although the trial judge did not expressly state that provocation and malice were "mutually exclusive," she repeatedly instructed that manslaughter was "an unlawful killing of one human being by another without malice aforethought," that manslaughter did not involve malice aforethought, and that there is no malice aforethought where a person kills "in the heat of passion which is . . . occasioned by a reasonable and great provocation" or uses excessive force while acting in self-defense. Compare *Commonwealth* v. *Boucher*, 403 Mass. 659, 663 (1989), where the trial judge "never identified, in any form of words, the 'malice' — 'no malice' fork in the road." We see no

error, let alone a substantial risk of a miscarriage of justice, in the instruction challenged by the defendant. See *Commonwealth* v. *Ferreira*, 417 Mass. 592, 597-598 (1994).

3. *The prosecutor's closing argument.* "I will leave you with the words of Edmund Burke. 'The only thing that it takes for evil to triumph is for a few good men and good women to do nothing.' So I call upon you in good faith and good conscience to find this man guilty, not because I say so, but because the evidence shows that on January 3, 1989, that this defendant, while carrying the rifle, the 30/30 loaded rifle, attacked and set up the victim, . . . killing him with deliberate premeditation and malice afore-thought." Although defense counsel objected to the remark, the trial judge found it to be no more than a call upon the jury "to do what their con-science dictated." Assuming without deciding that the remark constituted an improper comment to the effect that it was the jury's duty to convict, we conclude that, standing alone, it does not require reversal. Compare *Commonwealth* v. *Ward*, 28 Mass. App. Ct. 292 (1990), where the Com-monwealth's case was far from overwhelming, and the prosecutor's closing argument, "[t]aken in the aggregate . . . sounded a persistent theme that the jury had a duty to confront crime in the streets bravely and to avenge the wrong done the victim." *Id.* at 294. Notwithstanding our conclusion, we note that it says little for the Commonwealth that after an eight-day trial on an indictment charging murder in the first degree, it would put any conviction at risk for a literary contrivance.

*Judgments affirmed.*

*Benjamin H. Keehn,* Committee for Public Counsel Services, for the defendant.

*Edmond J. Zabin,* Assistant District Attorney, for the Commonwealth.