COMMONWEALTH *vs*. KEVIN M. O'BRIEN.

No. 00-P-1705.

Suffolk. February 5, 2002. - October 1, 2002.

Present: MASON, COHEN, & MILLS, JJ.

*Larceny. Practice, Criminal,* Argument by prosecutor, Comment by prosecutor, Instructions to jury.

Remarks made by the prosecutor at a criminal trial, arguing a fact that was not in evidence and suggesting to the jury that they infer the defendant's guilt from the existence of the charge against him and from his failure to exculpate himself, required reversal, where the judge did not give curative instructions, the defendant preserved his right to review under a prejudicial error standard, the improper remarks went to the heart of the case, and the prosecution's case was weak. [172-175]

COMPLAINT received and sworn to in the Boston Municipal Court Department on March 1, 2000.

The case was tried before *Annette Forde*, J.

*Kimberly Wittenberg Lurie* for the defendant.

*Kajal K. Chattopadhyay*, Assistant District Attorney, for the Commonwealth.

COHEN, J. After a jury trial in the Boston Municipal Court, the defendant was convicted of larceny of a snow plow truck.[1] His appeal is based primarily upon two comments made by the prosecutor in closing, which the Commonwealth concedes to be improper. The prosecutor argued a fact that she had been unable to place in evidence, and she suggested that the jury infer the defendant's guilt from the existence of the charge against him and from his failure to exculpate himself. After consideration of the factors relevant to analyzing a claim of improper argument, see, e.g., *Commonwealth v. Kozec*, 399 Mass. 514, 518 (1987),

---

[1]The charge was brought under G. L. c. 266, § 28.

we are not satisfied that the defendant received a trial free of undue prejudice. We therefore reverse the judgment of conviction.

We begin by summarizing the evidence put forward by the Commonwealth (none was introduced by the defense), interspersed, as necessary, with relevant procedural history. On February 19, 2000, Timothy Brennick, a maintenance employee of Boston University School of Medicine (school), worked through the night removing snow, using a white Dodge pickup truck fitted with a plow. This vehicle was registered to Boston Medical Center (center).

As he worked, Brennick began to experience trouble with the truck, so he brought it back to the center's lot and parked it with the keys inside. Two days later, Brennick initially noticed that the truck was parked where he had left it, but later that day he saw it being driven out of the lot by an individual whom he did not recognize. Brennick conversed for twenty to thirty seconds with the driver, who told Brennick that he was taking the truck to City Side Auto Garage (City Side) for repairs.

Brennick had heard of this garage and accepted the driver's explanation, even though the driver was not wearing anything to indicate that he was from City Side. As the jury later learned from another witness, Francis McGourty, the school's assistant manager of operations, City Side was not among the three repair shops used by the school; nor did the school ever receive a repair bill from City Side for work done on the truck. At trial, Brennick identified the defendant as the individual who drove the truck away.

Some days after the truck was removed from the lot, Boston University police began to investigate its whereabouts and eventually came to suspect that the defendant had stolen it. Their reasons for focusing on the defendant did not come in evidence, however, even though the prosecutor repeatedly attempted to elicit testimony from the investigators and other witnesses associated with the school that the defendant had driven the truck to the city of Brockton and had gotten into an accident, and that the center, as registered owner, learned this information from the other party to the accident and the Brockton police. These details were excluded due to successful

defense objections.[2] Thus, the testimony was simply left that, as a result of conversations with Brockton police and others, the investigators focused their attention on the defendant and obtained a warrant for his arrest.

The defendant was arrested on March 1, 2000, after he was seen driving a different truck, a red or orange Ford Bronco, to a temporary employment agency near the school. After being given his Miranda warnings, he made several inculpatory statements, which later became the subject of a motion to suppress. At the suppression hearing, the defendant claimed that all of his postarrest statements were involuntary because they were made at a time when he had stopped taking medication prescribed for his mental illness. Ultimately, the judge decided that the statements were voluntary and denied the motion, but the judge also ruled that the prosecutor was not to elicit or refer to remarks made by the defendant to the arresting officers about his involvement in the accident in Brockton because those particular statements had not been timely disclosed to defense counsel.

The defendant's other inculpatory statements did come in evidence through the testimony of the arresting officers. The officers testified that the defendant said that he "takes plow trucks" and leaves them behind the Boston police barracks where no one would look for them. They further testified that he told them that, as a joke, he once drove a stolen plow through the Callahan or Sumner Tunnel during a snow storm, accompanied by an unsuspecting police escort. Over the defendant's objection, the officers also were permitted to tell the jury that the defendant acknowledged that the Bronco he was seen driving just before his arrest was not his truck.[3]

In her closing argument, the prosecutor went beyond the

─────────

[2]Coming from these witnesses, the substance of the communications received from the Brockton police and others at the accident scene was inadmissible hearsay. See *Commonwealth v. Rosario*, 430 Mass. 505, 509-510 (1999).

[3]This ruling forms the basis of the defendant's second and remaining argument on appeal: that the defendant's statement about the Bronco implied that he had committed another theft and so was inadmissible "bad act" evidence. We are not convinced that the jury would have interpreted the evidence as the defendant posits, but even if they did, the statement was admissible in the judge's discretion. See generally *Commonwealth v. Gollman*, 436 Mass. 111, 114-115 (2002).

actual evidence, stating that the investigation was precipitated by "a call from the Brockton police department" that "had possibly reported the defendant as having stolen the truck and as having been caught with the truck." This was a particularly inexcusable overstatement in view of the judge's repeated rulings precluding the introduction of both the hearsay details of the reports from Brockton and the defendant's postarrest admission that he had been involved in the Brockton accident. Thus, when defense counsel objected to these remarks, the judge agreed to address the error in her instructions.

The prosecutor also impermissibly argued that if the defendant had been an employee of City Side, "perhaps there would have been an employee of City Side here to testify on his behalf" or "he wouldn't have been charged with this crime . . . it would have been resolved by the court." The former statment was improper in the absence of a request to the judge for a legal determination that there was sufficient foundation for such an inference,[4] see *Commonwealth* v. *Vasquez*, 27 Mass. App. Ct. 655, 658 (1989), and the latter was burden shifting. Again, defense counsel objected and the judge agreed to address the impropriety in the charge.

True curative instructions were not forthcoming, however. The judge only addressed the issues generally in the charge, without referring to the particular errors in the prosecutor's argument. The prosecutor's comments about the substance of the call from the Brockton police department were only met by the conventional admonition that the jury were the sole and exclusive judges of the facts and that it was their recollection of the evidence that governed. This was not a focused and specific response to the prosecutor's embellishment on the evidence. See, e.g., *Commonwealth* v. *Kelly*, 417 Mass. 266, 270 (1994) (curative instructions should be focused on the error); *Commonwealth* v. *Ward*, 28 Mass. App. Ct. 292, 296-297 (1990) (to counteract "poisonous effect," curative instructions must be directed against the improper comments).

---

[4]The judge may deem a defendant's failure to produce exculpatory witnesses to be a fair matter of comment only if "the evidence against [the defendant] is so strong that, if innocent, he would be expected to call them." *Commonwealth* v. *Bryer*, 398 Mass. 9, 12 (1986), quoting from *Commonwealth* v. *Finnerty*, 148 Mass. 162, 167 (1889).

Likewise, there was no emphatic response to the prosecutor's regrettable invitation to the jury to infer the defendant's guilt from his failure to produce evidence that he was an employee of City Side and from the continued existence of the charge against him. Although the judge's charge contained a general instruction that the defendant in a criminal case "is not required to produce any evidence or call any witnesses or make any attempt to prove innocence," and that "the complaint against the defendant is only an accusation," we cannot be sanguine that the judge's charge neutralized the impact of the improper remarks.

The instructions were not corrective, in that they did not specifically refer to the prosecutor's improper comments. *Commonwealth* v. *Ward, supra* at 296. Moreover, the judge may have further muddied the waters by going on to employ the conceit of the disappearing presumption of innocence found in *Commonwealth* v. *Powers*, 294 Mass. 59, 63 (1936). The judge told the jury that "[i]t is only when the Commonwealth begins to introduce its evidence that the presumption in the defendant's favor begins to disappear. As the evidence against him goes in, then the presumption grows less and less strong, and if at the conclusion of the case the Commonwealth has convinced you beyond a reasonable doubt of his guilt, then the presumption has disappeared entirely."

Although technically correct,[5] this formulation was potentially confusing here, as the jury had just heard the prosecutor question the defendant's failure to rebut the Commonwealth's

---

[5]The presumption of innocence is not a true evidentiary presumption. Rather, it is a shorthand description of the premises upon which a criminal trial proceeds — that charges do not imply guilt, that the jury must base their decision on the evidence, and that the Commonwealth bears the burden of producing evidence and of proving the defendant's guilt beyond a reasonable doubt. See *Commonwealth* v. *Boyd*, 367 Mass. 169, 188 (1975); *Commonwealth* v. *Drayton*, 386 Mass. 39, 46 (1982). Consistent with these principles, an instruction that the presumption of innocence may "disappear" during the case is sufficient if it clearly imports that the disappearance occurs only after the Commonwealth has presented evidence that has convinced the jury beyond a reasonable doubt of the defendant's guilt. *Commonwealth* v. *Gunter*, 427 Mass. 259, 266-267 (1998); *Commonwealth* v. *Rodriguez*, 437 Mass. 554, 560 (2002). On the other hand, when such an instruction implies that the presumption disappears as soon as any evidence of guilt is introduced, its use constitutes prejudicial error. *Commonwealth* v. *Kane*, 19 Mass. App. 129, 139 (1984). We note that the disappearing presumption formulation is

evidence and prove his innocence. In this context, the disappearing presumption instruction may have reinforced the erroneous idea that the defendant was required to produce witnesses or other evidence to halt the downward slide of the presumption of innocence and thereby revive the jury's ability to return a not guilty finding.

Having concluded that the prosecutor's improper closing remarks were not cured by the judge's instructions, we comment briefly on the other factors that must be considered in determining whether the remarks require reversal. See *Commonwealth* v. *Kozec*, 399 Mass. at 518. Here, the defendant preserved his right to review under a prejudicial error standard by objecting when the prosecutor completed her argument.[6] See *Commonwealth* v. *Kelly*, 417 Mass. 266, 270 & n.6 (1994). Furthermore, the improper remarks went to the heart of the case: one bore on the burden of proof, see *Commonwealth* v. *Pagano*, 47 Mass. App. Ct. 55, 63 (1999), cert. denied, 525 U.S. 1089 (2000), and the other referred to excluded, prejudicial information that the defendant had been caught with the missing truck after the Brockton accident. See *Commonwealth* v. *Burke*, 373 Mass. 569, 575 (1977). Finally, when the case is viewed solely through the lens of the admitted evidence, it is, as the trial judge herself acknowledged, "very, very weak." In essence, the Commonwealth had two strings to its bow: Brennick's identification of the defendant after seeing him once for a matter of seconds, and the defendant's statements to the arresting officers about other instances of taking trucks. Because the case was not overwhelming, we are unable to conclude with confidence that the jury were not influenced by the improper closing remarks. See *Commonwealth* v. *Santiago*, 425 Mass. 491, 503 (1997).

*Judgment reversed.*

*Verdict set aside.*

---

"not preferred." *Commonwealth* v. *Rodriguez, supra* at 560. It is conspicuously absent from the Model Jury Instructions for Use in the District Court (1995) and might best be avoided as an unnecessary and potentially confusing embellishment on the standard charge.

[6]He also reiterated his position after the jury returned by making a motion for a mistrial, which the judge treated as a motion for new trial and denied.