NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

21-P-482

COMMONWEALTH

vs.

CHARLES DAVIS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant appeals from his convictions, after a jury trial, of assault and battery on a household member, G. L. c. 265, § 13M, and kidnapping, G. L. c. 265, § 26. He raises one argument on appeal, namely that the prosecutor misstated the evidence in closing argument, resulting in a substantial risk of a miscarriage of justice. We affirm.

The charges arose from two incidents involving the same victim, with whom the defendant had been in a dating relationship. The first incident occurred on October 1, 2014, and resulted in the charges for which the defendant was convicted. The second incident occurred on July 13, 2015, and resulted in charges of assault and battery by means of a dangerous weapon, G. L. c. 265, § 15A (b), kidnapping, G. L. c. 265, § 26, assault and battery on a family or household

member, G. L. c. 265, § 13M (a), threat to commit a crime, G. L. c. 275, § 2, and witness intimidation, G. L. c. 268, § 13B. The defendant was acquitted of all charges relating to the second incident.

Based on the victim's testimony, the evidence permitted the jury to find the following. The defendant and the victim met in 2013 and started to date the following year. The victim decided to end the relationship after the defendant became controlling and possessive in September 2014. On October 1, 2014, the defendant was supposed to pick the victim up from work to take her home. The pickup did not take place as arranged, and the victim ended up walking home. Right before she arrived home, the victim received a phone call from the defendant, who accused her of having sex with someone else. When the victim arrived in the parking lot of the apartment complex where she lived, the defendant drove into the lot, ran up to her, pulled her backwards by her jacket, dragged her by her hair along the ground, and picked her up and threw her into the car headfirst, where she hit her head against the dashboard. The victim screamed during these events. The defendant then drove away with the victim in the car, repeatedly accusing her of cheating on him, eventually stopped the car and digitally raped her, and then drove her back to her apartment. When the police arrived, the defendant told the victim that he was going to tell the

2

police that he had been helping her because she had a diabetic cramp.

Two other residents of the apartment complex testified to their own observations of the events. The first, Natasha Gaudette, testified that around 9 P.M. on October 1, 2014, she heard someone calling "help" multiple times and letting out a "blood-curdling scream." Gaudette looked out the window of her apartment, which overlooked the parking lot, and saw somebody shoving a very small woman or child, who was screaming, into the back passenger seat of a boxy shaped car. Gaudette described that the perpetrator scooped up the very small person, folded the person in half, and shoved the person into the car. The perpetrator then slammed the door shut, jumped into the car, and "skidded out of the parking lot, like, on two wheels. There was a squeal."

The second neighbor, Joanna Finiello, testified that she heard a woman screaming "help me" and "stop" in the parking lot. She saw a male figure with the passenger's side door of a car open "pummeling a woman that was screaming, fist, fist, fist." The woman was screaming for her life. The man slammed the car door shut and drove away. Finiello called 911 when the car returned to the parking lot about ten minutes later and reported that the perpetrator had returned to the complex.

The defendant argues that, in closing argument, the prosecutor mischaracterized the testimony of Gaudette by stating that Gaudette had identified the defendant as the perpetrator of the assault and kidnapping in the parking lot. The defendant points specifically to the following passage of the prosecutor's closing:

> "So, to judge [the victim's] credibility what do you have that corroborates her credibility? Well, I suggest you have Natasha Gaudette, and Joanne Finiello. . . . What did they tell you? From two people that knew nobody in this case, bloodcurdling screams for help, screaming for their life, someone being hit, and then being picked up and thrown in a car, Natasha Gaudette actually describing how the defendant picked [the victim] up, exactly the way [the victim] told you that he picked her up, and describing the car parked . . . ." (Emphasis added.)

It is certainly true that Gaudette did not identify the defendant (who was unknown to her) as the person who picked the victim up and threw her in the car. But the prosecutor did not suggest she had. Instead, the prosecutor's statement focused on Gaudette's description of how the victim was picked up and thrown into the car rather than on the identity of the person who performed those acts. We are buttressed in our view that the jury would have understood the prosecutor's statement as one describing acts rather than identity by the fact that identity was not seriously at issue in this case; indeed, defense counsel acknowledged that the defendant and victim had an intimate relationship, and that the defendant was at the victim's

4

apartment when the police arrived and that he told them that the victim had suffered a diabetic attack.  This was not a case about identification, but rather about whether the events described by the victim occurred at all.  See, e.g., Commonwealth v. Cheng Sun, 490 Mass. 196, 217 (2022), quoting Commonwealth v. Wilkerson, 486 Mass. 159, 180 (2020) ("We examine [all] the challenged statements 'in the context of the entire closing, the jury instructions, and the evidence introduced at trial'").

Even were we to assume that the prosecutor stretched the point, we see no substantial risk of a miscarriage of justice stemming from it.  See Commonwealth v. Pearce, 427 Mass. 642, 646 (1998) (unobjected-to misstatement of fact in closing argument to be reviewed for substantial risk of miscarriage of justice).  The judge instructed the jury that statements in closing argument were not evidence, and that it was up to the jury to decide whether and to what degree to credit the testimony of the witnesses.  As we have already noted, the defendant did not object, and the alleged misstatement went to a tangential matter that was not a contested issue in the case. See Commonwealth v. Kozec, 399 Mass. 514, 517-518 (1987) (listing various factors that may be considered in assessing whether substantial risk of a miscarriage of justice created by argument).  Finally, the jury were clearly not swept away by the

5

prosecutor's statement because they acquitted the defendant of most of the charges against him.

Judgments affirmed.

By the Court (Wolohojian,
Milkey & D'Angelo, JJ.[1]),

Assistant Clerk

Entered:  January 23, 2024.

---

[1] The panelists are listed in order of seniority.