COMMONWEALTH *vs.* JOSEPH LOGUIDICE. No. 93-P-105. March 24, 1994. *Practice, Criminal*, Argument by prosecutor. Further appellate review granted, 418 Mass. 1102 (1994).

We pass the question whether the trial judge's conduct lacked the requisite impartiality and conclude that the prosecutor's closing speech, unfortunately, exceeded the bounds of proper argument.[1] See *Commonwealth v. McLeod*, 30 Mass. App. Ct. 536, 537 (1991). As we once again see such a lack of care (or more likely a lack of preparation[2]) on the part of the prosecutor (who, we note, is not counsel on this appeal), we are constrained to reverse the defendant's judgments of conviction.[3] "Because of the prosecutor's failure so to prepare, scarce judicial resources have been needlessly wasted and a [very young] victim witness will endure the emotional hurt of testifying again" (footnote omitted). *Id.* at 541.

To all but the totally uninitiated, it should be clear by now that there is wholehearted judicial endorsement of the oft espoused view of our Supreme Judicial Court that improper closing argument[4] by both the defense counsel[5] and the prosecutor do great disservice to the system of justice generally and the legal profession directly. See and compare *Commonwealth v. Johnson*, 372 Mass. 185, 197-198 (1977). See also *Commonwealth v. O'Brien*, 377 Mass. 772, 778 (1979). We point out again that this conduct on the part of the Commonwealth's attorney "constitute[s] *prosecutorial error*, not judicial error" (emphasis in original). *Commonwealth v. Earltop*, 372 Mass. 199, 206 (1977) (Hennessey, C.J., concurring).

In reaching our decision, we have viewed the prosecutor's missteps collectively.[6] See *Commonwealth v. Borodine*, 371 Mass. 1, 11 (1976), cert.

---

[1]We do note, however, that notwithstanding that defense counsel apparently lacked the "skill of a Patrick Hastings" (*Commonwealth v. Satterfield*, 373 Mass. 109, 111 [1977]), the trial judge did not exhibit the patience and the skill to maintain courtroom decorum in the manner exemplified by Justice Francis J. Quirico or Justice Henry T. Lummus, whose treatise all trial judges would be well advised to study. See Lummus, The Trial Judge 7-27 (1937).

[2]See, e.g., *Commonwealth v. Haas*, 373 Mass. 545, 557 n.11 (1977).

[3]It would be preferable to have any new trial before a different judge if the defendant is represented by the same counsel.

[4]For example, see the embarassingly long and ancient list "culled from the reports of just the past two years [1975-1976]" in *Commonwealth v. Earltop*, 372 Mass. 199, 205-206 n.1 (1977) (Hennessey, C.J., concurring).

[5]See *Commonwealth v. McLeod*, 30 Mass. App. Ct. at 541 n.9.

[6]As the defendant's counsel made proper objections to these improprieties, the prosecutor and the trial judge were made aware of the "problems with the [closing] argument which . . . appellate counsel now raises." *Commonwealth v. Simmons*, 20 Mass. App. Ct. 366, 371 (1985). See and compare *Commonwealth v. Cobb*, 26 Mass. App. Ct. 283, 288 n.7 (1988) (seasonable objection is "of large, if not necessarily conclusive, importance upon appellate review"); *Commonwealth v. Deveau*, 34 Mass. App. Ct. 9, 14 (1993). Compare *Commonwealth v. Clary*, 388 Mass. 583,

denied, 429 U.S. 1049 (1977) ("the prejudicial impact of the prosecutor's charge should be assessed by looking at the combined effect of all his errors"). See also *Commonwealth v. Clary*, 388 Mass. 583, 591 (1983).

First, the defendant claims it was error for the prosecutor to ask the jury to infer that the young victim saw the defendant "masturbate [and] ejaculate[ ] sperm" after he took his penis out of the child's mouth. Notwithstanding the young victim's testimony that she saw "pee" come out of her attacker's "dinky" (penis), we think that the prosecutor's argument suggested knowledge of matters not in evidence. See *Commonwealth v. Burke*, 373 Mass. 569, 575 (1977). The jury had heard fresh complaint evidence from the victim's therapist that the victim disclosed that she saw the defendant "holding his penis, that when he took it out of her mouth, he wiggled it. And [the victim] demonstrated that." Compare *Commonwealth v. Licata*, 412 Mass. 654, 658-659 (1992) (details of crime to which victim testified generally are admissible under doctrine of fresh complaint). By making that explicit characterization of the defendant's actions based solely on fresh complaint evidence (i.e., not direct testimony), the prosecutor sailed too close to the wind, thereby committing prejudicial error. We are unable to say with confidence that the judge's instructions adequately cured the prosecutor's invitation to the jury to infer that the defendant masturbated in the presence of the young victim.[7] See *Commonwealth v. Burke*, 373 Mass. at 576; *Commonwealth v. Hawley*, 380 Mass. 70, 86 (1980). Cf. *Commonwealth v. Ryan*, 8 Mass. App. Ct. 941, 942 (1979).

The defendant alleges that another prosecutorial error occurred when the prosecutor told the jurors in her closing, "I suggest to you that the Walshes were out at church Sunday morning, and that other people in the building may or may not have been there . . . [and that] Sunday morning [is not] the busiest time in that hallway." The Walshes lived on the first floor of the building identified by the victim as the location of the attack. There was no direct evidence that the Walshes were at church (or even what was the level of activity in the building on the day the offense occurred or any other Sunday). The Commonwealth rightly concedes[8] that the conjecture by the prosecutor that the Walshes were at church on Sunday went beyond the direct evidence. The Commonwealth claims that it was the prosecutor's intent to correct the mistaken impression created by defense counsel that the rape occurred Sunday "midafternoon." This ex-

---

594 (1983) ("combined effect of the three improper arguments by the prosecutor was sufficiently prejudicial to create a substantial risk of miscarriage of justice").

[7] In response to the objection, the judge gave the perfunctory instruction to the jury that it was their memory of the facts that controlled. See *Commonwealth v. Sevieri*, 21 Mass. App. Ct. 745, 754 (1986) (judge gave "standard, not curative" instructions). See also *Commonwealth v. Clary*, 388 Mass. at 591.

[8] "There was only one unintentional misstatement (i.e., that the Walshes were at church on Sunday)."

planation rings hollow, however.[9] To suggest that the jury could infer that fact is too great a stretch. To tell them that potential witnesses were at another specific location not only suggested facts not in evidence but was pure speculation — totally unnecessary at that.

In his third claim of prosecutorial error, the defendant asserts "[a] similar, unsupported claim was made alleging that the [defendant] possessed keys to apartment 37C." The victim testified her attacker had taken her into apartment 37C and onto the roof. The Commonwealth, acknowledging that "there was no direct evidence that the defendant had a key to the roof or to apartment 37C," would like us to place this aspect of the argument in proper perspective and find that the prosecutor was merely drawing a reasonable inference. This we decline to do. Even if we were willing to do so, as with the other missteps, we still would condemn such "ill-advised rhetoric." *Commonwealth* v. *Harris*, 11 Mass. App. Ct. 165, 176 (1981).

The judgments are reversed, and the verdicts are set aside.

*So ordered.*

*Frank P. Marchetti* for the defendant.
*Judith B. Stephenson*, Assistant District Attorney, for the Commonwealth.


---

[9]Likewise, we decline to accept the Commonwealth's collateral ground that "some measure of jury sophistication can be assumed with regard to sorting out hyperbole and speculation." The short answer to that request is *who*, after being admonished to be careful not to do so, used hyperbole and offered speculation?

