## COMMONWEALTH *vs.* JOSEPH LOGUIDICE.

Middlesex. March 9, 1995. - June 8, 1995.

Present: LIACOS, C.J., WILKINS, ABRAMS, & GREANEY, JJ.

*Practice, Criminal,* Argument by prosecutor.

At a criminal trial, the prosecutor's two misstatements of the evidence in closing argument collectively constituted reversible error, where the defendant objected and the judge gave no curative instructions, where the evidence was not overwhelming, and where the prosecutor's erroneous statements, describing a circumstance that made the defendant's commission of the crime more plausible and putting the defendant in an unfavorable light, could not be viewed as unlikely to have affected the jury's verdicts. [455-457]

INDICTMENTS found and returned in the Superior Court Department on June 13, 1991.

The cases were tried before *Wendie I. Gershengorn,* J.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Martha Coakley,* Assistant District Attorney, for the Commonwealth.

*Frank P. Marchetti* for the defendant.

WILKINS, J. We granted the Commonwealth's application for further appellate review to consider its claim that any errors the prosecutor made in her closing argument did not amount to reversible error.

In *Commonwealth* v. *Loguidice,* 36 Mass. App. Ct. 940 (1994), the Appeals Court reversed the defendant's convictions on two indictments charging rape of a child under sixteen years by force and on other crimes arising out of an alleged incident involving a four year old complainant (child). The crimes were allegedly committed on Sunday, October 29, 1989, in a hallway of an apartment building in

Somerville. The child knew the defendant, who was a friend of her father. The issue at trial was whether the defendant had engaged in the criminal conduct described by the child, that is, whether the incident ever occurred.

The evidence against the defendant was not overwhelming because there was no independent confirmation of the child's testimony. She had told a different story from her trial testimony. There was evidence that her mother wanted to retaliate against the defendant because he had told the victim's father that she (the mother) had been "cheating" on him.

The jury had some difficulty in reaching their verdicts. The jury deliberated for approximately four hours on one day and for all of a second day. On the third day, after the jury had reported at the end of the second day that they were divided and that "[f]urther discussion may not be fruitful," the judge gave a so-called *Tuey-Rodriquez* charge, which is intended to encourage juries to reach verdicts. See *Commonwealth* v. *Rodriquez*, 364 Mass. 87, 98 (1973). After approximately another five hours of deliberation the jury returned their verdicts.

The Appeals Court appropriately viewed the prosecutor's alleged missteps collectively. *Commonwealth* v. *Loguidice, supra* at 940-941. In the first error, which the Appeals Court characterized as prejudicial (*id.* at 941), the prosecutor told the jury that after the defendant had taken his penis out of the child's mouth, the child saw him "masturbate [and] ejaculate[] sperm." There was no evidence to support that statement. An inference to that effect could not reasonably be drawn from the evidence.[1] The Appeals Court viewed this

---

[1]The Appeals Court indicated that the argument may have been based on somewhat ambiguous fresh complaint testimony which was not admitted for substantive purposes. The defendant did not seek a limiting instruction when the fresh complaint evidence was admitted, and the judge did not then give one. She did so, however, in her final jury instructions.

The defendant did not then and does not now object to the admission of fresh complaint evidence that exceeded the child's testimony concerning the crimes.

statement as suggesting to the jury that the prosecutor knew facts not in evidence. *Id.*

The prosecutor admits that she erred in arguing to the jury that the Walshes, who lived on the first floor of the building where the crimes allegedly occurred, had been at church that Sunday morning. The child's testimony was inconsistent as to when she was assaulted. At least twice, she testified that the events occurred in the afternoon, but there was some basis for concluding the events happened in the morning or at least that the issue was in doubt. The Appeals Court concluded that the prosecutor's speculative statement concerning people who might have been witnesses to the crimes had they been home also suggested facts not in evidence. *Id.* at 942.

The third matter to which the Appeals Court pointed concerns the prosecutor's argument that the defendant had a key that worked to gain access both to apartment no. 37C (in which, the child testified, the defendant had held her for a while) and to the roof of the building (where, she said, he took her). We do not regard this argument, although disjointed, as being seriously beyond the range of propriety. Viewed as a whole, the prosecutor was suggesting how the defendant might have obtained a key to the apartment and to the roof area where he had held the child.

There is no doubt that defense counsel objected with specificity to the prosecutor's closing argument.[2] The fact that he specifically objected alters the standard of review. Had there been no objection, we would consider the asserted errors to

---

[2]DEFENSE COUNSEL: "[M]y sister said that he masturbated and ejaculated in the hallway. There is no evidence of that in this case whatsoever. She said he did this, and I would say that that's wrongful, and I would ask the Court to so instruct the jury.

"Then she said that the Walshes were at church. There's no evidence of that. The Walshes' mother is a cripple, and she's saying they were at church, and there's no evidence of that here."

" . . .

"Then she talks about keys that [the defendant] could have gotten. There's no evidence here about [the defendant's] getting a key at any time or any place, and no evidence that anyone other than the people who lived in the apartment or the maintenance people had keys."

be of significance only if they created a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Kozec*, 399 Mass. 514, 518 n.8 (1987); *Commonwealth* v. *Clary*, 388 Mass. 583, 594 (1983). See also *Commonwealth* v. *Wright*, 411 Mass. 678, 681-682 (1992) (discussing the lower barrier for defendant in capital case governed by G. L. c. 278, § 33E [1992 ed.]). Cf. *United States* v. *Young*, 470 U.S. 1, 13 n.10, 20 (1985) (pointing out difference between plain error, a high hurdle for a nonobjecting defendant, and harmless error, applicable when there is objection to a prosecutor's argument). When, however, an objection is made to a prosecutor's error, the judge summarily rejects the challenge, and thus there is no curative jury instruction,[3] an appellate court should proceed with caution in considering whether it is likely that an error made no difference in the jury's result. See *Commonwealth* v. *Kozec, supra* at 518.[4]

In some circumstances, we can be persuaded that a prosecutor's error made no difference, but, unless we can conclude with confidence that an error was not likely to have influenced the jury's verdicts, the error must be treated as prejudicial, requiring a new trial. In making an assessment of the likely impact of an error in closing argument, we recognize that the jury should realize that the statements of counsel are arguments and not dispassionate recitations of fact. See *Commonwealth* v. *Kozec, supra* at 517. Here, the errors probably could have been cured by carefully focused instructions. See *Commonwealth* v. *Costa*, 414 Mass. 618, 629 (1993). *Commonwealth* v. *Kozec, supra* at 518, 522-523. There were no such instructions.

---

[3]DEFENSE COUNSEL: "I think that's basically all my objections, Your Honor."

THE JUDGE: "Okay. Do you want to be heard on any of them?"

THE PROSECUTOR: "No, Your Honor."

THE JUDGE: "Okay, thank you very much."

[4]If a prosecutor's error violated the defendant's Federal constitutional rights, there must be a new trial, at least in the Federal system, unless it is clear beyond a reasonable doubt that the jury would have returned a verdict of guilty in the absence of error. See *United States* v. *Hasting*, 461 U.S. 499, 510-511 (1983).

The prosecutor's errors do not bear directly on the defendant's guilt. They were collateral matters, and as such are less pernicious than would be errors directly bearing on an element of a crime to be proved. These misstatements of the evidence are not, however, minor errors. The misrepresentation that the Walshes were in church could have led the jury to conclude that the crimes were committed in the morning when the defendant was aware that the Walsh family, whom he knew, was away and could not surprise him with the child in the hallway outside their apartment. The misstatement about the defendant's engaging in masturbation could have prejudiced him in the eyes of jurors. The fact that an error was made on a collateral matter cannot alone make the error nonprejudicial and thus not reversible.

This was a close case for the jury. Success for the Commonwealth depended completely on the credibility of the child. In such an instance, errors in a prosecutor's closing argument describing a circumstance that made the defendant's commission of the crimes more plausible (the Walshes' absence) and putting the defendant in an unfavorable light (masturbation in front of the child) should not be viewed collectively as unlikely to have affected the jury's verdicts.

*Judgments reversed.*
*Verdicts set aside.*