COMMONWEALTH *vs.* CESAR RAMIREZ. No. 96-P-403. May 13, 1999. *Practice, Criminal,* New trial, Record, Argument by prosecutor. *Evidence,* Credibility of witness. *Witness,* Credibility, Bias.

A Hampden County jury convicted the defendant of assault and battery by means of a dangerous weapon and malicious injury to property valued over $250. Subsequently, the defendant filed a motion for a new trial based on newly discovered evidence, which was denied after an evidentiary hearing. On appeal, the defendant contends that (1) his motion for a new trial should have been granted; and (2) the prosecutor's closing argument was improper.

While at the home of one of his friends, John Papamarkakis, the victim, observed the defendant driving by the house in a Jeep with three other men in the vehicle. He then saw the three men, identified as Ignacio Segarra, Angel Gonzalez, and Pedro Acevedo, but not the defendant, get out of the Jeep and smash the windows of his Ford Mustang with baseball bats. The victim picked up a miniature bat and ran out of the house. The victim and Segarra began to swing the bats at each other, with the victim ultimately being struck and losing consciousness. The victim was severely beaten and sustained multiple injuries, including a fractured skull. He admitted that he never saw the defendant leave the car and that he and the defendant had a long-term hostile relationship.

Norman Hamel testified that while he was in a nearby variety store, he saw the defendant stop at a traffic light and ask Hamel's friend Toby Ferris where the victim was.[1] Hamel stated that he and Ferris then attempted to find the victim to warn him that the defendant was looking for him. Subsequently, Hamel and Ferris saw the defendant, along with the other assailants, beating the victim.

At trial, the defendant denied any involvement in the assault on the victim. The defendant presented an alibi defense, claiming that he had been at the Connecticut home of a customer, Armondo Gonzalez, polishing Gonzalez's automobile at the time of the incident. The defendant further testified that in the past the victim had insulted him, using ethnic slurs. Gonzalez supported the defendant and testified that the defendant came to his home and polished his car on the date of the incident.

---

[1]Ferris also testified and reiterated much of Hamel's testimony.

*Denial of motion for new trial.* The defendant's first claim of error is that his motion for a new trial was improperly denied. "A motion for new trial is addressed to the sound discretion of the judge, and the judge's disposition of the motion will not be reversed on appeal unless it is manifestly unjust, or unless the trial was infected with prejudicial error." *Commonwealth* v. *Caldwell,* 45 Mass. App. Ct. 42, 45 (1998), quoting from *Commonwealth* v. *Moore,* 408 Mass. 117, 125 (1990). Mass.R.Crim.P. 30(b), 378 Mass. 900 (1979). Here, the defendant based his motion for a new trial on newly discovered evidence, in the form of an affidavit and subsequent testimony by an individual named Frank Pinette. Pinette averred, in sum, that he had witnessed the beating of the victim and that the defendant was not present. Pinette further alleged that he had not informed anyone of what he had seen due to his fear of reprisal from the assailants.

To be newly discovered evidence, the evidence must "have been unknown by the defendant or his counsel and not reasonably discoverable by them at the time of trial." *Commonwealth* v. *Grace,* 397 Mass. 303, 306 (1986). The motion judge's unchallenged finding that Pinette's testimony was not known and could not reasonably have been discovered prior to trial is supported by the record. The defendant, however, must also establish that "the evidence . . . casts real doubt on the justice of the conviction. . . . [T]he judge must find there is a substantial risk that the jury would have reached a different conclusion had the evidence been admitted at trial." *Commonwealth* v. *Lo,* 428 Mass. 45, 53 (1998), quoting from *Grace,* 397 Mass. at 305-306. "The evidence said to be new not only must be material and credible . . . but also must carry a measure of strength in support of the defendant's position." *Commonwealth* v. *Scanlon,* 412 Mass. 664, 680 (1992), quoting from *Grace,* 397 Mass. at 305.

The defendant argues that the motion judge abused her discretion because she applied the wrong standard to the motion. The defendant quotes a portion of the judge's memorandum in which she stated, "I am not convinced that there is a substantial risk that a jury presented with Pinette's evidence would have reached a different conclusion than the jury reached in this trial." Seizing upon this language, the defendant correctly points out that it is not essential that the judge be convinced that the verdict would inevitably have been different; rather, "[i]t is enough that . . . the absent evidence would have played an important role in the jury's deliberations and conclusions, even though it is not certain that the evidence would have produced a verdict of not guilty." *Commonwealth* v. *Bennett,* 43 Mass. App. Ct. 154, 162 (1997), quoting from *Commonwealth* v. *Tucceri,* 412 Mass. 401, 414 (1992). However, when the entire text of the memorandum is read, it is clear that the judge was aware of, and applied, the correct standard. No less than seven times in the course of the memorandum did the judge recite the proper standard, with each such reference accompanied by appropriate citations to controlling precedent. While the language which the defendant quotes may be unfortunate, it does not amount to anything more than a single aberration, made inconsequential by the repeated recitation and application of the correct standard.

The defendant next claims that the judge abused her discretion in that she failed to conduct "a full and reasonable assessment of the trial record," *Commonwealth* v. *Tucceri,* 412 Mass. at 414, and instead limited her review to the testimony of Pinette and the four witnesses who testified for the Com-

monwealth to the exclusion of those witnesses who testified on behalf of the defendant. Again, a review of the motion judge's memorandum belies the defendant's claim. The judge thoroughly summarized the evidence presented at trial, including the testimony of the defendant and other defense witnesses. Though the judge began her analysis of the possible effect of Pinette's testimony with a discussion of the testimony of the four witnesses of the Commonwealth, this step was taken to assess the strength of the Commonwealth's case. In any event, the judge continued her analysis with a careful consideration of the defendant's case-in-chief and the potential support which Pinette's testimony would have provided. It is, then, evident that the judge extensively reviewed the entire record of the trial.

Finally, the defendant asserts that the motion judge's evaluation of Pinette's credibility was flawed in that, although the judge considered Pinette's demeanor and appearance while testifying, she failed to consider other factors which a jury would have been instructed to consider, e.g., whether the witness was biased or had made any prior inconsistent statements. A review of the judge's memorandum, however, reveals that she evaluated Pinette's testimony not only based on his demeanor and appearance, but also on a consideration of how the testimony could be reconciled with that of the various witnesses, for both the prosecution and the defense, who had testified at trial. She did not find Pinette's testimony to be credible, a finding which was well within her discretion and which we will not disturb absent an abuse of that discretion. See *Commonwealth* v. *Grace*, 397 Mass. at 307 ("we defer to [the] judge's assessment of the credibility of witnesses at the hearing on the new trial motion"). In sum, the motion judge conducted a thorough examination of the trial record and carefully evaluated Pinette's testimony both for its potential effect on the jury and for its credibility.

*The prosecutor's closing.* The defendant takes issue with several unobjected-to statements by the prosecutor in her closing argument which, according to the defendant, appealed to the jury's sympathy and inserted into the trial facts which were not in evidence.

The first part of the closing of which the defendant complains involves the prosecutor's description of the extent of the victim's injuries. It is beyond question that a prosecutor must not play on the jury's sympathy or emotions. See *Commonwealth* v. *Kozec*, 399 Mass. 514, 516-517 (1987); *Commonwealth* v. *Sevieri*, 21 Mass. App. Ct. 745, 754-755 (1986). The prosecutor here, however, was merely commenting on testimonial, medical, and photographic evidence, all of which was properly admitted. "To the degree the recitation of the evidence was inflammatory, that was inherent in the odious . . . nature of the crime committed." *Commonwealth* v. *Lyons*, 426 Mass. 466, 472 (1998), quoting from *Commonwealth* v. *Ingram*, 14 Mass. App. Ct. 999, 999 (1982) (prosecutor's "grisly" depiction of murder deemed proper, where evidence was properly admitted). *Commonwealth* v. *Sanchez*, 405 Mass. 369, 376 (1989), quoting from *Commonwealth* v. *Kozec*, 399 Mass. at 521 (prosecutor's graphic description of sexual assault of three child victims permissible, where argument went to issues in the case and was "based on what the jury saw and heard"). There was no error.

The defendant also contends that the prosecutor recited facts not in evidence when she described a fictional conversation in which the victim said to the defendant, "I have known you for almost seven years. Please don't hit me

again." The defendant argues that this remark, in addition to not having been testified to, was also inflammatory and was made to arouse sympathy in the jury. The defendant misunderstands the prosecutor's strategy. In reciting the hypothetical conversation, the prosecutor was simply trying to cast doubt on the defendant's theory that the victim had conspired to "frame" the defendant for the beating. The prosecutor asked the jury to consider whether, if the victim had truly wanted to incriminate the defendant, he would have created a story with far more inculpatory facts, such as those in the prosecutor's hypothetical. Indeed, immediately after the prosecutor recited the hypothetical conversation, she continued, *"But [the victim] never says that."* (Emphasis supplied.) This was permissible.

Finally, the defendant argues that the prosecutor again argued facts not in the record by stating that the victim had attended "a neighborhood school" with two individuals of Hispanic descent and that, as a result, the defendant's testimony that his family was the only Hispanic family in the neighborhood should not be believed. While the victim did testify that he had attended middle school with Gonzales and Segarra, the defendant is correct that there was no testimony that the middle school was in fact a "neighborhood school." Although there was evidence from which a jury may have been able to infer this fact, we need not decide that question here, since, even if the remark was improper, there is no risk, let alone a substantial one, of a miscarriage of justice. See *Commonwealth* v. *Loguidice*, 420 Mass. 453, 455-456 (1995). Whether or not the Chestnut Middle School is a neighborhood school was a collateral issue, as was whether the defendant's family was the only Hispanic family in his neighborhood. See *Commonwealth* v. *Loguidice*, 420 Mass. at 457 (prosecutorial errors focusing on collateral matters "are less pernicious than would be errors directly bearing on an element of a crime to be proved").[2] Moreover, the comment was a single passing moment in an otherwise proper closing argument. See *Commonwealth* v. *Cunneen*, 389 Mass. 216, 223-224 (1983) (prosecutor's remark in opening statement was "a vague and fleeting comment, not likely to influence, or even to seize the attention of the jury").

*Judgments affirmed.*

*Denial of motion for new trial affirmed.*

*Barbara J. Sweeney* for the defendant.

*Deborah D. Ahlstrom,* Assistant District Attorney, for the Commonwealth.

---

[2]Of course, we recognize that this collateral issue may have been minimally relevant to the defendant's credibility. Nonetheless, the remark by the prosecutor was so fleeting, and the issue so peripheral, that there could not have been any adverse effect.