Following a jury trial in the Superior Court, the defendant, Anderson Massillon, was convicted of two counts of assault and battery by means of a dangerous weapon upon a pregnant person, two counts of assault and battery upon a pregnant person, and violation of an abuse prevention order.[2] On appeal, he contends that the prosecutor's misstatements in closing argument warrant a new trial. We affirm.
Background. When the defendant and victim began dating, around December of 2013, the defendant knew that the victim was three to four months pregnant. In February, 2014, while staying at the defendant's friend's apartment, the couple had an argument. When the victim attempted to end the conversation, the defendant punched her on the right side of her face. He then "grabbed" her handbag and fled, stealing money and a cellular telephone chip before later returning the bag.
At some point between March 3 and March 14, 2014, while staying in a hotel room with another couple one night, the defendant left their room. Upon returning, he found the victim showering, and angrily accused her of infidelity. He shouted at her, tried to argue with her, and closed the door to the bathroom. The victim repeatedly told him to open the door. The defendant complied, and then punched her on the side of her face and pinned her arms against the wall. Eventually he allowed her to leave the bathroom, at which point she called security, who arrived and "took him out [of] the room."[3] Following this incident, on March 14, the victim obtained an abuse prevention order against the defendant. The order was extended on March 28, but, after the defendant "kept begging [her] to do it," the victim asked a judge to amend the order to allow contact with him.
On April 6, 2014, the defendant and victim booked a fourth-floor hotel room in Waltham. While the defendant was out of the room, the victim's friend, Osi Brathwaite, came to visit her. The defendant returned to the room, became angry, spoke negatively of Brathwaite, and "was making fun of [him]." As a result, Brathwaite became uncomfortable and left.[4] The couple began arguing, and after the victim craned her head to the side as if she was "not paying attention," the defendant became violent. He "pinned" her arm to the bed, covered her face with pillows such that she could not breathe, and, after a struggle led them to the ground, repeatedly banged her head against the floor. When she tried to leave, he dismantled the room's telephone, and slammed her head against the door.
Eventually, the victim escaped the room. As she tried to use the telephone near the elevator, she saw the defendant run down the corridor toward the stairwell. She descended in the elevator and ran to the front desk. A hotel employee, Levina Benson, noticed that the victim was "frantic" and telephoned the police. When the police arrived, Officer Elizabeth Fleming noted that the victim was "disheveled" and had blood on her sweatshirt. Upon investigating the room, Officer Fleming found bedding and two pillows on the floor, the contents of a handbag spread out on the bed, the telephone dismantled as described by the victim, and "fresh" blood on the wall. The next day, Detective Linda Moschner followed up with the victim and observed that she had a swollen lip, a bloody cut behind her left ear, and redness and swelling on her right arm.
The defense centered on the victim's credibility. The defendant did not call any witnesses to testify. The jury ultimately convicted him of the above-referenced offenses. This appeal ensued.
Discussion. The defendant challenges various aspects of the prosecutor's closing argument. Where there was a timely objection, we review for prejudicial error. See Commonwealth v. Cole, 473 Mass. 317, 333 (2015). Where there was no objection, review is limited to whether any alleged error created a substantial risk of a miscarriage of justice. See Commonwealth v. Loguidice, 420 Mass. 453, 455-456 (1995). Under either standard, we consider the challenged statements in light of the entire argument, the instructions, and the evidence at trial. See Commonwealth v. Hrabak, 440 Mass. 650, 654 (2004) ; Commonwealth v. Reid, 73 Mass. App. Ct. 423, 431-432 (2008). The relevant factors in evaluating whether the cumulative effect of the alleged errors requires a new trial include (1) whether there was a timely objection; (2) the centrality of the error; (3) the judge's instructions; (4) the jury's ability to recognize hyperbole; and (5) the strength of the Commonwealth's case. See Commonwealth v. Ruiz, 442 Mass. 826, 835 (2004).
1. Misstatements of fact and law. The defendant first contends that a new trial is warranted because the prosecutor made serial misstatements of fact and law in closing. It is well settled that in closing, "counsel may argue the evidence and the fair inferences which can be drawn from the evidence." Commonwealth v. Hoffer, 375 Mass. 369, 378 (1978). "Counsel may not refer to or suggest their knowledge of matters not in evidence," Commonwealth v. Hoppin, 387 Mass. 25, 30 (1982), but may attempt to "fit all the pieces of evidence together so that they form a comprehensive and comprehensible picture for the jury." Commonwealth v. Ferreira, 381 Mass. 306, 316 (1980) (quotation omitted). Moreover, in evaluating the effects of a closing argument on the jury, we presume "[a] certain measure of jury sophistication," Commonwealth v. Kozec, 399 Mass. 514, 517 (1987), and that the jury will follow the judge's instructions. Commonwealth v. Pope, 406 Mass. 581, 588 (1990).
a. Objected-to statements. The defendant objected to two statements in the prosecutor's closing as unsupported by the evidence. First, he objected to the prosecutor's statement that "[i]t's clear that [the defendant] knew about the [restraining] order because what does he do? He persuades her to modify the conditions so he can see her." This was not error. As noted above, the victim specifically testified that the defendant "kept begging [her] to [modify the restraining order]." Contrary to the defendant's assertion, this unambiguous testimony directly supports the prosecutor's remark, which fairly summarized the evidence at trial.[5]
Second, the defendant objected to the prosecutor's statement that the "[the victim and Brathwaite] both told you the defendant ... goes into the bathroom." On appeal, the defendant argues that this was a prejudicial misstatement of the evidence because, pursuant to the court's Crayton ruling,[6] Brathwaite only testified that an unidentified male went into the bathroom, but did not specify that this male was the defendant. The argument is unavailing. Prosecutors are entitled to argue reasonable inferences from the evidence that are favorable to their case. See Commonwealth v. Donovan, 422 Mass. 349, 357 (2009). Based on all of the evidence at trial, including the testimony of both the victim and Brathwaite, it was a reasonable inference that the man Brathwaite saw in the hotel room was the defendant. Moreover, even assuming error, we detect no prejudice. Upon weighing the relevant factors, see Ruiz, supra, we are confident that this statement had "little or no effect on the jury's deliberations." Commonwealth v. Beaudry, 445 Mass. 577, 586 (2005). Although the defendant objected to the prosecutor's statement,[7] the evidence powerfully supported the victim's testimony.[8] Moreover, the judge's thorough instructions on the jury's fact-finding role and the nonevidentiary nature of closing arguments mitigated any risk of prejudice. We presume that the jury followed those instructions. See Pope, supra.
b. Unobjected-to statements. The defendant next challenges certain statements to which there was no objection at trial. We agree with the defendant's argument that the prosecutor misstated the reasonable doubt standard when she said:
"In order for you to find the defendant not guilty, not only would you have to disbelieve [the victim], but you would have to disbelieve [Brathwaite], you would have to disbelieve Levina Benson, you would have to disbelieve Officer Fleming, and you would have to disbelieve Detective Moschner. ..."
See Commonwealth v. Smith, 387 Mass. 900, 903 (1983). However, in the circumstances of the present case, the misstatement does not warrant reversal. Indeed, in the case the defendant relies upon, Commonwealth v. Thomas, 401 Mass. 109, 113-114 (1987), the Supreme Judicial Court concluded that a more egregious misstatement of the reasonable doubt standard, in the context of the entire trial, did not create a substantial risk of a miscarriage of justice.[9] Here, where (1) there was strong evidence of the defendant's guilt, (2) the judge properly instructed the jury as to the reasonable doubt standard, and (3) the defendant failed to object or request a curative instruction, we likewise conclude that the error did not create a substantial risk of a miscarriage of justice.[10]
The remaining unobjected-to statements challenged in the defendant's brief were not in error. Each of these remarks was either supported by reasonable inferences from the evidence or constituted permissible rhetoric, and none requires further discussion. See Commonwealth v. Wilson, 427 Mass. 336, 350 (1998).
2. Propensity evidence. The defendant contends that the prosecutor improperly referenced the defendant's uncharged conduct for propensity purposes in closing argument. There was no objection on this basis at trial, so review is again limited to whether any alleged error created a substantial risk of a miscarriage of justice. See Loguidice, 420 Mass. at 455-456. Even assuming, arguendo, that the Commonwealth erred on this ground, we discern no such risk. Not only did the judge provide a contemporaneous and detailed limiting instruction upon admitting evidence of the March, 2014, incident in the hotel room, but she also repeated that instruction in her final charge. See Commonwealth v. Julien, 59 Mass. App. Ct. 679, 686-687 (2003) ("[T]he judge adequately guarded against any potentially prejudicial effect by carefully instructing the jury, when the testimony was admitted, and again during the final charge"). Given the mitigating power of the judge's instructions, as well as the strength of the Commonwealth's case, we discern no substantial risk of a miscarriage of justice. See Commonwealth v. Lapointe, 55 Mass. App. Ct. 799, 806 (2002).
3. Crayton order. Finally, the defendant argues that the Commonwealth violated the judge's Crayton order by stating that the victim and Brathwaite "both told you" that the defendant entered the bathroom.[11] The defendant contends that this statement, along with Brathwaite's testimony that during his conversation with the male in the hotel room, they discussed "the music thing," had the effect of identifying the defendant as the man in the hotel room, which unfairly bolstered the victim's credibility. We disagree. That there was no objection lends support to the conclusion that the challenged statements were "not so egregious and prejudicial as [the defendant] now claims." Commonwealth v. Maynard, 436 Mass. 558, 570 (2002). Furthermore, as discussed, supra, it was more than reasonable to infer from the evidence at trial that the man Brathwaite saw in the hotel room was the defendant. Combined with the strength of the Commonwealth's case and the judge's thorough instructions, the challenged statements did not create a substantial risk of a miscarriage of justice.[12]
Judgments affirmed.

The defendant was found not guilty of attempted murder and intimidation of a witness.

The defendant was not criminally charged for the March, 2014, incident. At trial, the judge provided a comprehensive limiting instruction in which she told the jury, inter alia, that they could consider this evidence only for "the state of mind of the defendant, the relationship between the parties, and ... the credibility of the witnesses." She specifically forbade the jury from considering it as proof of "criminal personality or bad character or a propensity to commit the crime charged."

Brathwaite's trial testimony corroborated this portion of the victim's testimony. He accurately described the hotel room and stated that, while he was there, a "lighter" skinned black man in his early twenties came in. He testified that the man was "upset," spoke to him with a forceful "tone," and that he, Brathwaite, ultimately departed after a few minutes because he "didn't like where the conversation was going." However, pursuant to a Crayton order, discussed in further detail infra, Brathwaite was precluded from identifying the defendant in court. See Commonwealth v. Crayton, 470 Mass. 228, 236-243 (2014).

The victim testified that the defendant "begged" her to modify the abuse prevention order, and also stated that the defendant was present at the March 28, 2014, hearing.

See Crayton, 470 Mass. at 236-242.

The defendant did not object to the Commonwealth's closing argument at the conclusion of the prosecutor's closing, but instead waited until the conclusion of the judge's final charge. He did not request a curative instruction or amended instruction regarding closing arguments.

The victim's testimony was corroborated by four other witnesses including Brathwaite, Officer Fleming, Detective Moschner, and Levina Benson.

There, the prosecutor similarly indicated that the jury needed to disbelieve all of the Commonwealth's witnesses in order to find the defendant not guilty. See Thomas, 401 Mass. at 113. However, the error was compounded in that case when the prosecutor implored the jury to "find [the defendant] not guilty if you find that he is truly innocent," and told the jury that "if you disbelieve those people, then I am, indeed, a bad person; because I have aided in a conspiracy to convict an innocent person." Ibid.

We likewise discern no substantial risk of a miscarriage of justice with respect to the prosecutor's statement that "at some point [on the evening of the first incident], the defendant woke [the victim] up by being loud on the phone, arguing with his baby's mother about whether or not she was pregnant." According to the testimony at trial, the defendant woke the victim because he was loudly celebrating. Although the prosecutor misstated the evidence, the comment was not relevant to any live issue in the case, and did not bear on the defendant's guilt. See Loguidice, 420 Mass. at 457.

Out of an abundance of caution, the judge issued a Crayton order that prohibited Brathwaite both from identifying the defendant in court, and from testifying as to specifics of a conversation he had with the defendant in the hotel room. The purpose of the rule articulated in Crayton, 470 Mass. at 236-242, was to limit the admissibility of suggestive in-court show-up identifications where the witness was unable to participate in a preliminary out-of-court identification procedure. The rule was expressly confined to "in-court identifications of the defendant by eyewitnesses who were present during the commission of the crime" (emphasis supplied). Id. at 242.

Other points that the defendant argued, but we have not discussed in this decision, have not been overlooked. "We find nothing in them that requires discussion." Commonwealth v. Domanski, 332 Mass. 66, 78 (1954).