COMMONWEALTH *vs.* ROSE M. MONSON.

No. 02-P-199.

Hampden. March 5, 2003. - April 28, 2003.

Present: BROWN, GREENBERG, & MASON, JJ.

*Controlled Substances. Practice, Criminal,* Argument by prosecutor. *Evidence,*
Informer.

At the trial of indictments charging possession of cocaine with the intent to
distribute, the judge did not err in denying the defendant's motions for
required findings of not guilty where, despite the defendant's claims that
she did not know of the cocaine's presence in a key case located under the
bar counter at which she was seated, the jury reasonably could have
inferred from the evidence presented that the defendant in fact had
constructive possession of the cocaine. [870-871]

At the trial of indictments charging the possession of cocaine with the intent
to distribute, the prosecutor's suggestion to the jury during closing argu-
ment that the police had received a tip from an informant or other informa-
tion that the defendant was selling drugs before they entered the lounge in
which they discovered cocaine immediately in front of where the defendant
was seated, although out of the defendant's sight, was improper and, in the
circumstances of this case, created a substantial risk of a miscarriage of
justice, in that the improper argument could well have influenced the jury's
verdict. [871-873]

INDICTMENTS found and returned in the Superior Court Depart-
ment on May 31, 2000.

The cases were tried before *Judd J. Carhart,* J.

*Richard L. Goldman* for the defendant.

*Tammy Ciak (Jane Davidson Montori,* Assistant District At-
torney, with her) for the Commonwealth.

MASON, J. The defendant was found guilty by a jury of pos-
session of cocaine with intent to distribute (G. L. c. 94C,
§ 32A[c]), possession of cocaine with intent to distribute in a
school zone (G. L. c. 94C, § 32J), and, after a bench trial, of
possession of cocaine with intent to distribute, second offense
(G. L. c. 94C, § 32A[d]).

On appeal, the defendant claims error in the judge's denial of her motion for a required finding of not guilty and in the prosecutor's closing argument. She also claims that her counsel was ineffective in failing to request an instruction on the lesser included offense of possession of cocaine. Because the prosecutor impermissibly alluded to certain hearsay statements that the judge had excluded from evidence, we reverse.

*Background.* The Commonwealth's evidence was as follows. On May 2, 2000, at approximately 4:30 P.M., Springfield police Officer Felix Aguirre, dressed in plain clothes and acting at the direction of another Springfield police officer, Steven Kent, walked into a bar in Springfield known as the My Place Lounge to buy cocaine. Officer Aguirre previously had purchased cocaine there on numerous occasions.

When Officer Aguirre entered the lounge, fewer than ten people were inside. They included the defendant and an employee of the lounge, Barbara Rattelle, who were sitting in the rear of the lounge, at the end of a circular bar. Officer Aguirre walked directly up to the defendant and asked her for a "twenty." The defendant, after looking him up and down, responded, "I don't think so. I don't know you." Officer Aguirre then left the lounge and joined other officers outside who were conducting surveillance of the lounge.

A short time later, the defendant came out of the lounge, went across the street to a restaurant, and returned with a bag of food. At this point, other police officers, including Pedro Soler and Joselito Lozada, entered the lounge and found the defendant sitting in the same seat at the bar she had previously occupied.

After obtaining the defendant's consent, Officer Lozada searched the defendant's purse but did not find any drugs. Officer Soler then instructed the defendant to get up from her chair and, after conducting a search of the area, found a magnetic key case under the counter top directly in front of where the defendant had been sitting. The key case contained thirty-five individually wrapped rocks of cocaine.

At trial, the defendant moved in limine to prevent the Commonwealth from presenting any evidence that the police had been acting on a tip from an informant in entering the lounge. The judge allowed this motion, ruling that Officer Aguirre could

testify only to "[w]hat he did," and not to any information he had received.

Officers Kent, Aguirre, Soler, and Lozada testified at trial. During Officer Kent's testimony, the prosecutor attempted to elicit that he had instructed Officer Aguirre to seek out the defendant at the lounge but the defendant objected and the judge sustained the objection.

Subsequently, during Officer Aguirre's testimony, the prosecutor attempted to elicit that Officer Aguirre had entered the lounge intending to approach the defendant and no one else. The defendant objected to this testimony, the judge sustained the objection, and during a subsequent bench conference, the judge reiterated that he had excluded any reference to any informant's tip. In addition, the judge specifically admonished the prosecutor not to place the informant's tip before the jury through the "back door" by bringing out the specific instructions Officer Aguirre had received before he entered the lounge.

Thereafter, Officer Lozada testified that, prior to entering the lounge, he had been conducting surveillance from across the street and had seen the defendant, whom he recognized by name, emerge and go to a restaurant. When defense counsel asked him during cross-examination who had first mentioned the defendant's name to him, Officer Lozada responded that Officer Kent had mentioned the defendant's name earlier that evening before he had gone to the lounge. The prosecutor then attempted on redirect to elicit that Officer Kent had instructed Officer Lozada to look for particular items when he went to the lounge but, once again, the defendant objected and the judge sustained the defendant's objection.

The defendant testified and denied that she had any knowledge that the key case was located under the bar counter or that it contained cocaine. She also denied that she had made the statement attributed to her by Officer Aguirre. She further stated that a Hispanic male had in fact approached her and asked for "coke," but she had responded only that he had the wrong person.

Rattelle and another person employed at the lounge, Karen Pietras, also appeared as witnesses for the defendant. Rattelle testified that the police had searched for twenty or thirty minutes

before finding the magnetic key case under the bar counter. Pietras testified that she had seen the defendant enter the lounge at about 4:30 P.M. on the evening in question, but had not seen her place anything under the bar counter.

1. *Motion for required finding of not guilty.* The defendant claims that the judge erred in denying her motion for a required finding of not guilty because the evidence introduced at trial was sufficient to show only that she was present at the bar where the cocaine was discovered, but was insufficient to show either that she knew that the cocaine was present or that she had the power and intent to exercise control over the cocaine. The essential elements of a showing of constructive possession, namely, knowledge, power, and intent to exercise control over the illicit substance, see *Commonwealth* v. *Carmenatty*, 37 Mass. App. Ct. 908, 909 (1994), may be shown by "presence, supplemented by other incriminating evidence." *Commonwealth* v. *Brzezinski*, 405 Mass. 401, 410 (1989), quoting from *Commonwealth* v. *Albano*, 373 Mass. 132, 134 (1977). Here, there was evidence that the defendant was sitting not just near the cocaine under the bar, but rather right in front of it. There was also evidence that, when Officer Aguirre approached the defendant and asked for a "twenty,"[1] the defendant refused his request only because she did not know him, and not for any other reason.

The jury could reasonably infer from this evidence that the defendant in fact had constructive possession of the cocaine. See *Commonwealth* v. *Gonzalez*, 42 Mass. App. Ct. 235, 237-241 (1997). See also *Commonwealth* v. *Altenhaus*, 317 Mass. 270, 273 (1944) (knowledge "may be, and generally is, proved by circumstantial evidence; and it may be inferred from a great variety of circumstances"). While the defendant testified that her conversation with Officer Aguirre was substantially different from what he had described, the jury were not required to credit this testimony but could instead conclude that Officer Aguirre's account of the conversation was accurate and showed that the defendant in fact had the requisite knowledge, power, and intent

---

[1]Officer Aguirre testified that the term "twenty" was a street term used for twenty dollars' worth of cocaine.

to exercise control over the cocaine that was present. See *Commonwealth* v. *Plouffe*, 52 Mass. App. Ct. 543, 545 (2001).

2. *Improper closing argument.* The prosecutor began his closing argument by stating:

> "Ladies and gentlemen of the jury, [defense counsel] spoke to you at some length about coincidence. I'm going to talk to you about that a little later."

Then, a short time later, the prosecutor stated:

> "Which gets me back to the issue of the coincidence. Ask yourself, was it a coincidence on May 2 of the year 2000 that an undercover police officer at five o'clock in the afternoon goes to My Place Lounge? Is it a coincidence that he enters the My Place Lounge and by all estimates there [are] six to ten people there? Is it a coincidence that he doesn't go to anyone else at the bar but goes directly to Rose Monson? Is it a coincidence that the undercover officer asked Ms. Monson for a twenty?"

A little later, after arguing that the defendant had carefully looked Officer Aguirre over before refusing his request for a "twenty," the prosecutor stated:

> "Now, next I would like . . . you to ask yourself, is it a coincidence — or shortly thereafter, as soon as Ms. Monson comes back from the Chinese restaurant, is it a coincidence that the officers went back into My Place Lounge, and is it a coincidence they don't go anyplace else except for Ms. Monson?

> "The officers went there for one purpose. That is to search and locate narcotics. And where do they locate them? They didn't locate them anyplace else except for exactly where Ms. Monson was hiding them, exactly where they were stored."

The defendant contends that these statements were improper because they strongly implied to the jury that the police had received a tip from an informant or other information that the defendant was selling cocaine before Officer Aguirre had entered the lounge to buy such cocaine, notwithstanding the judge's prior allowance of the defendant's motion in limine to exclude

any reference to any such information. The defendant further contends that, even though she did not object to the prosecutor's argument, it created a substantial risk of a miscarriage of justice, and hence, reversal of her convictions is required. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).

We agree with the defendant that the prosecutor's statements were improper. The judge had ruled no less than four separate times that the Commonwealth was barred from presenting any evidence that, when he entered the lounge and attempted to purchase cocaine from the defendant, Officer Aguirre was acting on a tip from an informant or other information the police had received. See *Commonwealth* v. *Rosario*, 430 Mass. 505, 509-510 (1999) (discussing need for strict control of any such evidence even where necessary to show state of police knowledge). Notwithstanding these repeated rulings, the prosecutor, by urging the jury to consider that it was not just a coincidence that Officer Aguirre had approached the defendant and asked for a twenty, rather than any of the other persons in the lounge, strongly implied that Officer Aguirre was in fact acting on a tip from an informant or other information the police had received when he entered the lounge and attempted to purchase a twenty from the defendant. This was improper in view of the judge's prior rulings.[2] See *Commonwealth* v. *Burke*, 373 Mass. 569, 575 (1977); *Commonwealth* v. *Mosby*, 11 Mass. App. Ct. 1, 9 (1980); *Commonwealth* v. *O'Brien*, 56 Mass. App. Ct. 170 (2002). See also *Commonwealth* v. *Kater*, 388 Mass. 519, 533 (1983).

---

[2]We reject the Commonwealth's argument that the prosecutor's statements were permissible because defense counsel himself brought out during his cross-examination of Officer Lozada that Officer Lozada had heard the defendant's name mentioned by Officer Kent before he (Officer Lozada) had gone to the lounge. Nothing in that testimony permitted the prosecutor to ignore the judge's explicit ruling that there should be no reference to any information the police may have received pertaining to the defendant's possible selling of drugs in the lounge.

We also reject the Commonwealth's argument that the prosecutor's statements merely mirrored or repeated statements defense counsel had made during his own closing argument. Defense counsel suggested during closing argument only that Officer Aguirre had promptly left the bar after speaking to the defendant because he had "blown his cover." He did not at any time suggest, as the prosecutor plainly did, that Officer Aguirre had entered the bar because the police had received a tip that the defendant was selling drugs.

We also conclude that, in the circumstances of this case, the improper argument created a substantial risk of a miscarriage of justice. "An error creates a substantial risk of a miscarriage of justice unless we are persuaded that it did not 'materially influence[]' the guilty verdict." *Commonwealth* v *Alphas*, 430 Mass. 8, 13 (1999), quoting from *Commonwealth* v. *Freeman, supra* at 564.

Here, the Commonwealth's evidence against the defendant was far from overwhelming. While the cocaine was discovered immediately in front of where the defendant was sitting, it was hidden underneath the bar counter out of the defendant's sight, and there were several other people in the lounge who might have placed it there. Moreover, the defendant denied that she had made the statements attributed to her by Officer Aguirre, which themselves were less than an explicit admission that she possessed the cocaine that was hidden under the bar counter. In these circumstances, the prosecutor's improper suggestion that the police had received a tip from an informant or other information that the defendant was selling drugs before they entered the lounge could well have influenced the jury's verdict.

In light of the foregoing, the judgments are reversed and the finding and verdicts are set aside.[3]

*So ordered.*

---

[3]In view of our disposition of the matter, we need not reach the defendant's additional claim that her counsel was ineffective in failing to request an instruction on the lesser included offense of possession of cocaine.