# RESCRIPT OPINIONS.

COMMONWEALTH *vs.* DAVID E. GARCIA. No. 08-P-1009. September 1, 2009.
*Practice, Criminal,* Argument by prosecutor, Instructions to jury.

We reverse the defendant's convictions in this case because of serious and fundamental improprieties in the prosecutor's closing argument, including wrongfully invoking a jury's duty to convict in order to vindicate the complainant, asking the jury to imagine being in the complainant's place (including the trauma of having to testify), and leveling repeated entreaties for jury sympathy. The prosecutorial errors in the closing were the subject of objection by defense counsel. Hence our standard of appellate review is to determine whether the closing argument was prejudicial error. That is, "if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected." *Commonwealth* v. *Flebotte*, 417 Mass. 348, 353 (1994), quoting from *Commonwealth* v. *Peruzzi*, 15 Mass. App. Ct. 437, 445 (1983).

1. *Procedural background.* The case arose out of charges that the defendant assaulted and raped his girlfriend, the complainant, then held her overnight against her will. After a jury trial, the defendant was convicted of rape, G. L. c. 265, § 22(*b*); kidnapping, G. L. c. 265, § 26; assault and battery, G. L. c. 265, § 13A(*a*); and witness intimidation, G. L. c. 268, § 13B.

Proof of the offenses, in the main, rested on the testimony of the complainant and other witnesses who testified at trial concerning what the complainant had stated to them about the sexual assault, rape, and being held captive. See *Commonwealth* v. *King*, 445 Mass. 217, 228-248 (2005), cert. denied, 546 U.S. 1216 (2006).

The defense was one of consent. The defendant conceded that there had been an argument between him and the complainant, but, according to the defendant, consensual sex ensued. Further, according to the defendant, the complainant was free to leave at any point during the evening.

2. *The improper prosecutorial closing.* In closing argument, the prosecutor improperly appealed to the jury to convict the defendant in order to vindicate the complainant. This vindication theme centered on the prosecutor's exhortations that the jury "acknowledge and affirm" the testimony of the complainant by returning guilty verdicts:

> "What he did to that young lady over there, [the complainant], is not only inexcusable, unforgivable, but most importantly, it's illegal. Your guilty verdicts today will acknowledge and affirm that what [the complainant] said, what she did, how she acted, how she reacted, will be accepted

and understood. It will not be scrutinized, it will not be discounted and it won't be overlooked."

Then, having brought vindication to the fore as a jury obligation, the prosecutor enhanced this improper theme by characterizing the complainant as being "re-victimized" by having to recount to other persons and to the jury what had happened. This recounting and, in effect, re-enactment of a terrifying event, the prosecutor urged, activated a jury duty to convict:

> "No one, none of us here, can understand what she went through. None of us here can put ourselves in her position being victimized by someone that she loved, a man that she said, I love. The man that she came to you and told 14 strangers that she loved."

> ". . .

> "She told Sergeant Lemieux and thereafter told Officer Hernandez. She told the doctor and nurse. Talk about re-victimization. How many more times did she have to tell that story? Well, she had one more time. That young lady came to Court and she sat on that witness stand and she told you. She told you exactly what the Defendant did to her . . . . She told you, ladies and gentlemen, 14 complete strangers, what the Defendant did to her."

These prosecutorial invectives were beyond the pale of any acceptable closing advocacy. The prosecution of crime, bringing to justice those who commit crimes, and redress for victims affected by crimes, "may be the obligation of law enforcement agencies and society." *Commonwealth* v. *Ward*, 28 Mass. App. Ct. 292, 294 (1990). However, these governmental, prosecutorial obligations are "not at all the task of the jury." *Ibid.* The prosecutor's closing argument "was the equivalent of an exhortation that the jury had a duty to the victims to render verdicts of guilty." *Commonwealth* v. *Sanchez*, 405 Mass. 369, 375 (1989). It is wrong to argue that a jury should convict a defendant in order to "do their duty," and, thereby, to justify a complainant's "action and her trust in the justice system." *Commonwealth* v. *Cobb*, 26 Mass. App. Ct. 283, 286 (1988). Accord *Commonwealth* v. *Sanchez*, 405 Mass. at 375; *Commonwealth* v. *Walker*, 421 Mass. 90, 103 (1995) ("inappropriate" to argue verdict would "do justice" for complainant); *Commonwealth* v. *Torres*, 437 Mass. 460, 464-465 (2002) (improper to enlist jurors in a "call for justice" and to hold defendant "accountable for what he did"); *Commonwealth* v. *Harris*, 11 Mass. App. Ct. 165, 176-177 & n.9 (1981) (improper to ask jury to not "let [the victim] down" after she demonstrated fortitude in testifying at trial); *Commonwealth* v. *Baran*, 74 Mass. App. Ct. 256, 283 (2009) ("[n]ot only did the prosecutor improperly encourage the jury to determine the verdict on the basis of sympathy for the complainants, . . . but he also indicated that the jury would be answerable to the public should they elect to return a not guilty verdict, a result that the prosecutor implied would amount to a 'thwart-[ing]' of justice").

In this case, the aforedescribed vindication-based errors in the closing had the ineluctable effect of "sweep[ing] the jurors beyond a fair and calm consideration of the evidence." *Commonwealth* v. *Clary*, 388 Mass. 583, 592

(1983), quoting from *Commonwealth* v. *Graziano*, 368 Mass. 325, 332 (1975). In determining whether there was prejudicial error, we cannot say that the decision of the jury to render guilty verdicts was not substantially swayed by the prosecutorial errors in the closing. See *Commonwealth* v. *Flebotte*, 417 Mass. at 353; *Commonwealth* v. *Silva-Santiago*, 453 Mass. 782, 808 (2009). This case is comparable to *Commonwealth* v. *McLeod*, 30 Mass. App. Ct. 536, 537 & n.2, 540-541 (1991), wherein we reversed convictions as a result of closing argument errors, including improper references to the "tragedy" of being raped and having "to take the witness stand," coupled with requests that the jury consider the victim's "humiliation in public" and take the "opportunity to rectify that tragedy." In *McLeod*, as here, the "crucial question . . . was whether the victim had consented to sexual intercourse, a matter which, as might well be expected, was hotly contested." *Id.* at 537.

Furthermore, notwithstanding the major closing argument errors, the trial judge delivered a generalized and inadequate instruction, stating only that "[e]motion or sympathy for one side or the other [has] no place in these proceedings."[1] There was no instruction tailored to the excesses in the prosecutor's closing. See *Commonwealth* v. *Buzzell*, 53 Mass. App. Ct. 362, 371 (2001) ("[t]he judge's instructions were not an adequate counterweight to the improper remarks").

For the foregoing reasons, the "improper closing argument is sufficiently consequential to require reversal [and] presents an exercise in weighing factors discussed in *Commonwealth* v. *Kozec*, 399 Mass. [514,] 518-519 [1987]." *Commonwealth* v. *Ward*, 28 Mass. App. Ct. at 295.

The judgments are vacated, the verdicts are set aside, and the case is remanded for further proceedings.

*So ordered.*

*Lisa M. Kavanaugh*, Committee for Public Counsel Services, for the defendant.

*Karen L. Carlo*, Assistant District Attorney, for the Commonwealth.

---

[1] On appeal, the defendant also contests the admission of the testimony of several witnesses to whom the complainant spoke and related the events in question. The defendant contends the introduction of such multiple witness testimony went beyond the scope of the first complaint doctrine. See *Commonwealth* v. *King*, 445 Mass. at 228-248. Given our reversal because of prosecutorial errors in the closing, we will not address the first complaint issue. It is sufficient to state that certain of the witness testimony admitted in the course of this trial appears problematic under the first complaint rule. The matter of compliance with first complaint standards of evidence should be addressed anew in any retrial of this case.