NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

20-P-618

COMMONWEALTH

vs.

OLIVIO BRAUN.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

A Superior Court jury convicted the defendant of rape, and a judge subsequently found him guilty of being a habitual offender. Concluding that deoxyribonucleic acid (DNA) evidence was properly admitted and the prosecutor's misstatement during closing argument did not sway the jury's verdict, we affirm the rape conviction. Because there was insufficient evidence to support a finding that the defendant was a habitual offender, we reverse that conviction.

Discussion. 1. Rape conviction. a. Hearsay. The defendant asserts that the judge erroneously admitted hearsay statements about the collection of vaginal swabs from the victim, without which there would have been no foundation to admit DNA evidence. He argues that the DNA evidence influenced

the jury's decision to convict him, thus creating a substantial risk of a miscarriage of justice. We disagree.

The victim testified that the defendant was the uncle of one of her younger brothers, and he visited her home a few times per month. On April 28, 2017, the victim returned home from work, showered, and fell asleep on her bed in her towel. When the victim woke up around 4 A.M., she felt the defendant's mouth on her vagina. The victim screamed for her mother, who chased the defendant out of the apartment. The victim was taken to a hospital, where her vaginal area was examined and swabbed by a sexual assault nurse examiner (SANE).

The Commonwealth entered into evidence hospital records describing the victim's examination and swabbing by the SANE nurse. Two Massachusetts State police chemists testified to tests performed on what were identified as "swabs that were collected . . . from the vaginal area, the external genital area, [and] the perianal area." Without objection by the defendant, one chemist testified that she prepared the sample from the genital swab, and the other chemist testified that she conducted DNA tests on the sample. The second chemist also testified about the results of her DNA testing.

The defendant first argues that the expert testimony regarding DNA results was improper because the chemists relied on hearsay contained in the hospital records, without which they

2

could only say that "DNA was found on swabs of unknown origin." He relies on Commonwealth v. Jones, 472 Mass. 707, 716 (2015), to support his contention that the DNA testimony was admitted without proper foundation. In Jones, DNA evidence was improperly admitted where there was no testimony from a percipient witness regarding the victim's hospital examination or the collection of swabs. See id. at 717 n.3 ("information concerning how such swabs were collected should be admitted through the testimony of a person, such as, without limitation, the nurse or the victim, who has personal knowledge of the specific 'rape kit' examination at issue"). Here, the victim testified that swabs of her vaginal area were taken during the SANE examination. This testimony provided the necessary foundational link between the swabs referenced in the hospital records and the DNA evidence.[1]

The defendant also asserts that the chemists' lack of personal knowledge of the swab collection and handling procedures deprived him of meaningful cross-examination about the reliability of the DNA results. He cites Commonwealth v.

---

[1] We note that in Jones, the crux of the defense was that there was no vaginal penetration, so the source location of the swab and the reliability of DNA results were central issues. See Jones, 472 Mass. at 710, 717. Here, the defendant's theory of defense, at least initially, was simply that he had "a consensual [sexual] encounter" with the victim, and he did not challenge the reliability of forensic testing or DNA results at trial.

3

Tassone, 468 Mass. 391, 402 (2014), in support of this proposition. In Tassone, Massachusetts State police chemists testified to DNA results generated by a private laboratory. See id. at 401. Here, by contrast, the chemists testified to analysis and testing they performed themselves, and neither commented on the work done by the other. To the extent the defendant argues he was unable to cross-examine the chemists about the chain of custody from the hospital to the State police laboratory, we discern no risk of a miscarriage of justice where the defendant made no effort to contest the chain of custody and where he could have cross-examined the Brockton police evidence officer, who testified at trial that he was responsible for collecting evidence and transporting it to the lab for analysis.

b. Closing argument. The defendant also argues that the prosecutor's misstatement of the DNA evidence during her closing argument constituted prejudicial error. "In closing argument, a prosecutor may not 'misstate the evidence or refer to facts not in evidence.'" Commonwealth v. Walters, 472 Mass. 680, 703 (2015), S.C., 479 Mass. 277 (2018), quoting Commonwealth v. Joyner, 467 Mass. 176, 188-189 (2014).

The defendant contends that the prosecutor misstated the DNA evidence when she said,

> "That little DNA thing that traces back to being [the defendant]. . . . It comes from a man. Only a man.

4

"And there was only one man with his mouth on [the victim's] vagina that night. Not one in eight. Not one of, you know, 10 million. There was one. And that's where he's sitting."

The defendant argues that, because the probability that a randomly selected man would match the major profile on the swab -- as the defendant did -- is only one in eight, it was wrong to say that the DNA "trace[d] back to [the defendant]."

When a defendant timely objects to a prosecutor's statements made during closing argument, we review "to determine whether the closing argument was prejudicial error." Commonwealth v. Garcia, 75 Mass. App. Ct. 901, 901 (2009). "To decide whether the errors at trial amounted to prejudicial error, we must determine, after pondering all that happened without stripping the erroneous action from the whole, [whether] the judgment was not substantially swayed by the error" (quotations omitted). Commonwealth v. Peno, 485 Mass. 378, 399 (2020).

The DNA evidence was properly admitted with expert testimony explaining its statistical significance. See Commonwealth v. Mattei, 455 Mass. 840, 850-852 (2010). In closing argument, defense counsel argued forcefully that the DNA evidence had little probative value because one of every eight males in the population -- and possibly even the victim's younger brother, who had the same paternal lineage as the

5

defendant -- had the same DNA.  Taken in context, the thrust of the prosecutor's argument in response was that, putting the DNA statistical probabilities aside, the defendant was the only man with his mouth on the victim's vagina that night.

Although the DNA evidence bolstered the credibility of the victim, given its statistical significance, the DNA evidence itself could not single out the defendant, and it could not sustain a conviction of rape because DNA found on the victim's external genital area is not evidence of penetration.  The victim's testimony was the only evidence of penetration.  The prosecutor's statement that the DNA "traces back" to the defendant was perhaps inartful, but given the state of the evidence, the defendant's closing argument, and the judge's instruction that no matter what the attorneys said during closing arguments, the juror's recollection of the evidence controlled, we are confident that any error in the prosecutor's argument did not affect the jury's understanding of the DNA evidence and did not substantially sway the jury's verdict.  See Peno, 485 Mass. at 399.

2. Habitual offender conviction.  We review the sufficiency of the evidence to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt" (citation omitted).

6

Commonwealth v. Latimore, 378 Mass. 671, 677 (1979). To establish the defendant's status as a habitual offender, the Commonwealth was required to prove beyond a reasonable doubt that the defendant was the same Olivio Braun who had two qualifying convictions. See G. L. c. 279, § 25; G. L. c. 278, § 11A. Identity is an essential element that the Commonwealth must prove beyond a reasonable doubt. See Commonwealth v. Koney, 421 Mass. 295, 302 (1995). "Mere identity of name is not sufficient to indicate an identity of person." Id.

Here, the Commonwealth introduced Department of Correction (DOC) records showing that an Olivio Braun with a specific date of birth, had two qualifying convictions. The judge took judicial notice of testimony from the underlying jury trial on the rape charge that the defendant had that same date of birth. We agree with the defendant that this was error. See Koney, 421 Mass. at 302 (separate trial requirement precludes judge from relying on evidence presented at jury trial to establish identity of defendant during habitual offender trial). Because the defendant did not object to the jury trial evidence, we "determine whether the error created a substantial risk of a miscarriage of justice." Commonwealth v. Aviles, 461 Mass. 60, 72 (2011).

We are not persuaded by the Commonwealth's argument that the result would have been no different based on other evidence

of the defendant's identity.  The Commonwealth points to a witness who testified at the bench trial that he arrested the defendant on a warrant for domestic assault and battery in 2009. However, the witness did not provide any biographical information on the defendant or specifics about the 2009 crime to establish a link to the qualifying convictions in the DOC records.  The Commonwealth also contends that the trial judge could have compared the photograph in the DOC records with the man sitting in the courtroom.  The photograph is small, grainy, poorly lit, of low quality, and predates the habitual offender trial by eight years.  Moreover, nothing in the record indicates the judge actually compared the photograph to the defendant at the bench trial.  Finally, as the Commonwealth conceded at oral argument, the judge could not properly consider the defendant's statements regarding his age and "native language" during the jury-waiver colloquy as evidence connecting him to the DOC records.[2]

Ultimately, we conclude that without the judicially noticed facts, the evidence was insufficient to establish the defendant's identity as the same Olivio Braun in the DOC records with two qualifying convictions.  Accordingly, the defendant is

---

[2] In its brief, the Commonwealth argued that evidence from the colloquy was "consistent with the Department of Correction records."

entitled to an acquittal on the habitual offender portion of the indictment.[3]  See Commonwealth v. Kurko, 95 Mass. App. Ct. 719, 722-723 (2019) (conviction premised on legally insufficient evidence always creates substantial risk of miscarriage of justice).

   3.  Conclusion.  On the count charging the defendant with rape, the judgment is affirmed.  On the count charging the defendant as a habitual offender, the judgment is reversed, the finding is set aside, and judgment shall enter for the defendant.  Because the defendant was sentenced pursuant to the habitual offender statute, the sentence must be vacated, and the case is remanded for resentencing on the conviction of rape.

                                 So ordered.

                                 By the Court (Massing,
                                   Henry & Brennan, JJ.[4]),

                                 Joseph F. Stanton
                                 Clerk


Entered:  November 8, 2023.

---

[3] Because the evidence was insufficient to convict the defendant on the habitual offender portion of the indictment, we need not address his argument that he should not have been indicted and convicted under the habitual offender statute because his two prior convictions were not separate and distinct offenses.
[4] The panelists are listed in order of seniority.