NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1288

COMMONWEALTH

vs.

ZACHARY S. ROSCOE.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The defendant was convicted after a jury trial of operating under the influence of liquor, in violation of G. L. c. 90, § 24 (1) (a) (1). In his appeal, he challenges statements made in the Commonwealth's opening and closing arguments at trial. We affirm.

Background. 1. The offense. According to the testimony at trial, on December 17, 2019, at about 1 A.M., State police Trooper Kyle Melvin, who was patrolling Dudley Street in Boston, observed a black Honda sedan traveling with only one working headlight. The trooper reversed direction to stop the vehicle, but before he could do so, he saw the vehicle turn right onto Warren Street and "drive directly through the stop sign without

slowing or stopping."  The trooper activated his cruiser's emergency lights and pulled the sedan over.

The only occupant of the vehicle was the defendant, who was driving.  When the defendant rolled down his window, the trooper immediately smelled alcohol and noticed that the defendant had bloodshot, glassy eyes.  The trooper asked the defendant for his license and registration, and the defendant produced a debit card.  Eventually, he did produce both his license and registration.  The trooper asked him whether he had been drinking and the defendant stated, "I had about five or six shots.  Yeah, six shots.  But I'm good."  The defendant's speech was slurred and delayed.

The trooper asked the defendant to exit the vehicle to perform roadside assessments.  The defendant opened the driver's side door and swung his legs out of the vehicle, at which point Trooper Melvin noted "the weight of his upper body fall forward."  The defendant steadied himself by grabbing onto the vehicle's door.  When he stood up, his cell phone fell to the ground, and he struggled to retrieve it.

As the defendant stepped in front of the vehicle to perform the roadside assessments, the trooper noticed that he was unsteady on his feet and had to catch his balance a couple of times.  The trooper asked the defendant whether he had any

2

medical conditions or physical impairments that could affect his performance, and the defendant said he had none. The trooper also checked to ensure there were no tripping hazards or other debris on the sidewalk, and that it was not wet or slippery. The trooper assessed that the defendant was unable to successfully complete the two tests he had been asked to perform, the so-called "nine step walk and turn," and the "one-legged stand," which the trooper ended early after sixteen seconds because he feared the defendant would fall over.

The trooper concluded that the defendant was drunk, and he placed the defendant under arrest. After the defendant was secured in the police cruiser, the defendant stated, "Come on, man. I know I can drive under the influence." The trooper smelled the odor of alcohol as they drove to the police barracks. The defendant was asleep when they arrived there approximately fifteen minutes later. The trooper roused the defendant by calling his name twice. When he woke up, the defendant attempted to exit the cruiser with his seatbelt on. The trooper unbuckled the defendant's seatbelt for him. Throughout the booking process, the defendant repeatedly stated that he "was drunk and . . . just trying to get home."

2. Prosecutor's statements. The defendant argues on appeal that several of the prosecutor's statements in her

3

opening statement and closing argument were improper.  In her

opening, the prosecutor said,

> "And now, mind you, this is around 1:00 in the morning in a particularly busy area, despite the fact that it's 1 in the morning.  Maybe not many people on the road at that time.  This is still a public way.  People on foot.  People crossing walks.  This is, again, a very busy area."

However, on cross-examination, when asked whether there were

pedestrians or traffic, the trooper testified that traffic at

that time was below average and that there was nobody there.

In the prosecutor's closing argument, despite this

testimony, the prosecutor said,

> "And as it's been noted, it was late at night, one in the morning in the winter.  It's dark out.  Snow plows, I'm sure, were around.  What is important is that the trooper testified he didn't stop, slow down, or anything.  He just went right through that stop sign.  Now, that doesn't sound like safe driving to the trooper."

There was no evidence in the record of snow plows on the street.

Finally, the defendant argues that the prosecutor's closing

argument was improper because it appealed to the sympathy of the

jury towards potential victims of the defendant's actions and

implied that the jury should consider themselves as persons who

could have been there.  The prosecutor said, "I'd ask you to use

your common sense when you go back and your experience in

driving.  If you've never driven before, just being in the area

or even being a pedestrian you expect someone to stop at a stop

sign as safe driving."

4

Discussion.  1.  The claims of error.  When making an opening statement, so long as a prosecutor has a good faith basis for thinking that her description will be proven by evidence at trial, she may reference it in the opening, even if in the end it does not materialize at trial.  Commonwealth v. Kapaia, 490 Mass. 787, 800 (2022).  In this case, however, there is no indication in the record what good faith basis the prosecutor could have had for asserting that this was a busy area at the time of the arrest.  Therefore, we conclude that her statement in opening was in error.

In a closing argument, a prosecutor "may not . . . refer to facts not in evidence."  Commonwealth v. Joyner, 467 Mass. 176, 188-189 (2014), quoting Commonwealth v. Lewis, 465 Mass. 119, 129 (2013).  We agree with the defendant that the statement about snow plows in the prosecutor's closing argument was not supported by the evidence, and was thus also erroneous. Finally, we do not think the statement in closing about jurors' experience as pedestrians invited the jurors to exercise sympathy or put themselves in the place of potential victims, which would have been improper.  See Commonwealth v. Rutherford, 476 Mass. 639, 646 (2017), citing Commonwealth v. Worcester, 44 Mass. App. Ct. 258, 264 (1998); Commonwealth v. Andrade, 488 Mass. 522, 551 (2021).  Instead, we read it as a statement that

5

even pedestrians know that not stopping at a stop sign is not safe, so we find no error in that portion of the closing argument.

2. <u>Prejudice or substantial risk of a miscarriage of justice</u>. The only preserved claim of error concerned the statement about "snow plows" in the Commonwealth's closing argument. Where a successful claim of error has been preserved, we must reverse the conviction unless the Commonwealth can demonstrate that the error was not prejudicial. See <u>Commonwealth</u> v. <u>Garcia</u>, 75 Mass. App. Ct. 901, 901 (2009). We review unpreserved claims to determine whether any error resulted in a substantial risk of a miscarriage of justice. <u>Joyner</u>, 467 Mass. at 188, citing <u>Commonwealth</u> v. <u>Grandison</u>, 433 Mass. 135, 141-142 (2001).

We conclude that there was no prejudice or substantial risk of a miscarriage of justice due to the prosecutor's improper statements about snow plows and pedestrians being in the area at the time of the defendant's offense. The jury heard the trooper's actual testimony that there was no one around. More importantly, the evidence of the defendant's guilt was very strong. When asked for his license, the defendant gave the trooper his debit card. He was unsteady upon exiting his car. He performed poorly on two roadside assessments. He admitted to

6

having six shots and indicated that it was his own belief that he was driving drunk.

We conclude the Commonwealth has met its burden of showing the erroneous statement about the likelihood that there were snow plows in the area "did not influence the jury, or had but very slight effect." Commonwealth v. Flebotte, 417 Mass. 348, 353 (1994), quoting Commonwealth v. Peruzzi, 15 Mass. App. Ct. 437, 445 (1983). For the same reasons, we conclude the Commonwealth has shown the erroneous statement in the opening about pedestrians in the area did not create a substantial risk of a miscarriage of justice.

That does not end our analysis, because the defendant argues the errors cumulatively required reversal. We recognize that, particularly when viewed together, these erroneous statements may have been intended to create the impression that the defendant's driving was an immediate threat to the safety of the people actually in the area, even though, at least in the immediate area, there were none. This was improper, and we caution prosecutors that they must rely on the facts in evidence, and that arguments designed to bolster the Commonwealth's case on the basis of unsupported statements of fact will lead to reversals. In this case, the statement in closing may have reinforced the idea of immediate danger

introduced in the opening.  But even viewed in light of that, given the strength of the evidence of guilt here, and the irrelevance of the presence of people or traffic to the elements of the offense on which the jury were properly instructed, neither statement, nor the two errors taken together, were prejudicial.

Judgment affirmed.

By the Court (Rubin, Grant & Hershfang, JJ.[1]),

*Paul Little*

Clerk

Entered: October 4, 2024.

---

[1] The panelists are listed in order of seniority.